JAMES McDONALD vs. MASSACHUSETTS GENERAL HOSPITAL.

Suffolk.    March 13, 14. — June 26, 1876.   AMES & MORTON, JJ., ab-
sent.

A corporation, the object of which is to provide a general hospital for sick and in-
sane persons, having no capital stock nor provision for making dividends or profits,
deriving its funds mainly from public and private charity, and holding them in
trust for the object of sustaining the hospital, conducting its affairs for the pur-
pose of administering to the comfort of the sick, without expectation or right on
the part of those immediately interested in the corporation to receive compensa-
tion for their own benefit, is a public charitable institution.

The facts that a corporation, established for the maintenance of a public hospital, by
its rules requires of its patients payment for their board, according to their circum-
stances and the accommodation they receive; that no person has individually a
right to demand admission; and that the trustees of the hospital determine who
are to be received; do not render it the less a public charity.

A corporation, established for the maintenance of a public charitable hospital, which
has exercised due care in the selection of its agents, is not liable for injury to a
patient caused by their negligence, nor for the unauthorized assumption of one of
the hospital attendants to act as a surgeon.

TORT for injuries sustained by reason of negligent and un-
skilful surgical treatment of the plaintiff by the defendant's ser-
vants.    At the trial in the Superior Court, before *Allen*, J.,
the plaintiff put in evidence tending to show the following
facts :

The defendant was incorporated by the St. of 1810, *c.* 94.
The funds of the corporation have been derived from grants, de-
vises, donations, bequests and subscriptions of money and other
property contributed by the Commonwealth and benevolent per-
sons, to be used and improved for the erection, support and
maintenance of a general hospital for sick and insane persons,
according to the charter and acts in amendment thereof, and
from profits of the Massachusetts Hospital Life Insurance Com-
pany, paid over to the defendant, and also in part from the board
of paying patients.

The plaintiff, on December 9, 1870, fell from a building on
which he was at work, and his thigh bone was fractured, and
on the same day he was brought to the hospital of the defend-
ant, and there remained in one of the wards until February 4,
1871, when he voluntarily went away.    While in the hospital
he had gratuitously the surgical and medical care, attendance

and nursing which the hospital affords to its patients; he occupied a free bed, and all the expenses of his medical and surgical treatment and nursing, and of his shelter, warmth, food, washing and bedding, were borne as a charity by the defendant. The house pupil, appointed as provided in the by-laws, and who in the first instance set his fractured thigh bone, and continued, while the plaintiff was at the hospital, to attend to the plaintiff's case, under the direction of the attending surgeon, was a member of the Harvard Medical School, in the last of his three years of professional study, and received his degree of M. D. from Harvard College in the following June, 1871; the attending physicians and surgeons recommended him for his post, and the visiting surgeon, who had direct charge of the treatment of the fractured bone. and under whose direction and supervision the house pupil acted in his treatment of the plaintiff's fracture, was a man of the highest professional reputation and character; the said house pupil and attending surgeon treated the plaintiff's case gratuitously, and according to the regulations of the Massachusetts General Hospital. The treatment of all cases in the hospital is by the visiting physicians and surgeons, and the house pupils acting under their direction, each officer having the exclusive care and control of all patients assigned to them, and such physicians and surgeons act gratuitously, the defendant providing for patients without means, like the plaintiff, the hospital, nurses, bed, food, warmth and other comforts gratuitously; such visiting physicians and surgeons are practitioners in the city of Boston, outside of the hospital, and are selected by the trustees of the hospital to treat gratuitously patients who come to the hospital for gratuitous treatment; and this was the relation of the visiting surgeon to the defendant in this case.

The plaintiff offered evidence to prove that on the day he came to the hospital he objected to the house pupil doing anything to or with his fractured leg, and that he wanted and asked to be permitted to wait till the return of the resident physician, who was at the time absent. The plaintiff also offered evidence that previously to this time it had frequently happened that when a patient was brought in, having been injured by accident, the house pupils received him, and treated the case, if they so desired, without consulting any resident or visiting physician.

The plaintiff offered other evidence which he claimed tended to show that the fractured bone was not properly set, by reason either of the incompetency and negligence of the house pupil, or of the negligence of the attending surgeon.

The judge ruled that, even if the plaintiff should prove that the fractured bone was not properly set in consequence of the incompetency of the house pupil, or the negligence of him or the attending surgeon, the plaintiff was not entitled to recover, and the jury returned a verdict for the defendant. The plaintiff excepted to this ruling, and the judge reported the case for the consideration of this court. Annexed to the report was a copy of the by-laws and regulations of the defendant, the material parts of which appear in the opinion.

*L. M. Child*, for the plaintiff.

*D. E. Ware*, for the defendant.

DEVENS, J. The ground upon which the plaintiff seeks to maintain this action is that the defendant undertook, through its agents and servants, to treat his broken leg, and that this was done so negligently and unskilfully that he was permanently injured. It does not become necessary to consider whether the defendant, as it contends, consented only to provide for the plaintiff a hospital bed, food and other comforts, while the attendance of the house pupil and surgeon was of such a character that they had the direct and exclusive professional charge of the patient, and are the only persons who can be made responsible for any neglect or want of professional skill and care. We are satisfied that, for other reasons, the plaintiff is not entitled to recover upon the case made by him.

The defendant was a public charitable institution under the laws of the Commonwealth. The object for which it was incorporated was to provide a general hospital for sick and insane persons. St. 1810, *c.* 94. Its funds are derived from grants and donations made by the Commonwealth from profits which it is entitled to receive from the Massachusetts Hospital Life Insurance Company and other companies incorporated in the Commonwealth, and from the grants, devises, donations, bequests and subscriptions of benevolent persons, and from the board of paying patients. While the price of board is placed as low as the funds of the hospital will permit, patients who are there received

are expected to pay as nearly as possible according to their own circumstances and to the accommodations they receive. In addition to the accommodations provided for such patients, a certain number of free beds are furnished from the general funds of the institution and from donations made especially for this object, the occupants of which are not expected to pay anything. Regulations of Hospital, *c.* 15, §§ 1–4. Of one of these beds the plaintiff was an occupant.

The corporation has no capital stock, no provision for making dividends or profits, and whatever it may receive from any source it holds in trust to be devoted to the object of sustaining the hospital and increasing its benefit to the public, by extending or improving its accommodations and diminishing its expenses. Its funds are derived mainly from public and private charity ; its affairs are conducted for a great public purpose, that of administering to the comfort of the sick, without any expectation, on the part of those immediately interested in the corporation, of receiving any compensation which will enure to their own benefit, and without any right to receive such compensation. This establishes its character as a public charity. *Jackson* v. *Phillips*, 14 Allen, 539. The fact that its funds are supplemented by such amounts as it may receive from those who are able to pay wholly or entirely for the accommodation they receive does not render it the less a public charity. All sums thus obtained are held upon the same trust as those which are the gifts of pure benevolence. *Gooch* v. *Association for Relief of Aged Females*, 109 Mass. 558.

Nor does the fact that the trustees, through their agents, are themselves to determine who are to be the immediate objects of the charity, and that no person has individually a right to demand admission to its benefits, alter its character. All cannot participate in its benefits ; the trustees are those to whom is confided the duty of selecting those who shall enjoy them, and prescribing the terms upon which they shall do so. If this trust is abused, the trustees are under the superintending power of this court as a court of equity, by virtue of its authority to correct all such abuse, and the interest of the public therein, that is to say, of the indefinite objects of the charity, may be represented by the attorney general. *Sanderson* v. *White*, 18 Pick. 328. *Attorney General* v. *Old South Society*, 13 Allen, 474.

It might well be questioned whether any contract could be inferred between the plaintiff and defendant. It has offered to him freely those ministrations which, as the dispenser of a public charity, it has been able to provide for his comfort, and he has accepted them. It has no funds which can be charged with any judgment which he might recover, except those which are held subject to the trust of maintaining the hospital. If, however, any contract can be inferred from the relation of the parties, it can be only on the part of the corporation that it shall use due and reasonable care in the selection of its agents. Where actions have been brought against commissioners of public works serving gratuitously, for negligence in carrying on the work, by which injury has occurred, it has been held that they were not liable if proper care had been used by them in selecting those who were actually to perform the work. *Holliday* v. *St. Leonard's*, 11 C. B. (N. S.) 192. The liability of the defendant corporation can extend no further than this; if there has been no neglect on the part of those who administer the trust and control its management, and if due care has been used by them in the selection of their inferior agents, even if injury has occurred by the negligence of such agents, it cannot be made responsible. The funds intrusted to it are not to be diminished by such casualties, if those immediately controlling them have done their whole duty in reference to those who have sought to obtain the benefit of them. There was no attempt to show that the trustees had in any respect failed in the performance of their duty. If they had made suitable regulations, had selected proper persons to fill the position of surgeons, then, whether 'hose persons neglected to perform their duty, or whether another person, as the house pupil, not selected for the office of surgeon, assumed without authority to act as such, and injury has thus resulted, the plaintiff has no remedy against the corporation. *Judgment on the verdict.*