Merrimack, }
June 5, 1906. }

HEWETT *v.* WOMAN'S HOSPITAL AID ASS'N *&* a.

Where a declaration combines separate causes of action against two defendants, an inconsistency between the verdicts rendered by a jury upon a trial of the suit is to be taken advantage of by a motion in the superior court to set aside both verdicts, upon the ground of a mistrial.

A general verdict against one defendant cannot be set aside upon the ground that it is controlled by a special verdict in favor of another, when it is impossible to determine that one finding is general or special, rather than the other.

A pupil nurse employed in a hospital maintained by a charitable corporation, under a contract whereby she is to receive professional training and be paid a small remuneration, is a servant of the corporation and not a recipient of its bounty.

A charitable corporation which is engaged in the maintenance of a hospital, and which holds its property for that general purpose, is liable for injuries resulting from a negligent failure to warn its servant concerning dangers of the employment.

Evidence that the manager of a hospital, being informed concerning the contagious character of a patient's disease, failed to disclose the nature of the malady to the nurse in charge of the case, who was ignorant of the danger, warrants a finding of negligence on the part of the corporation.

CASE, for negligently exposing the plaintiff to a contagious disease without warning, and for negligence on the part of the defendant, Mrs. Russell, as a physician in treating the plaintiff after she had contracted the disease. The jury returned a verdict against the hospital and one in favor of Mrs. Russell. Transferred from the April term, 1905, of the superior court by *Chamberlin*, J.

The plaintiff was a pupil nurse in the hospital under a contract by which she was to be trained for a nurse and receive ten dollars a month. She began her service there in January, 1902, when she was nineteen years old. In December, 1903, Mrs. Russell put her in charge of a patient, whose malady the state bacteriologist, after an examination of a culture taken from her, informed Mrs. Russell was diphtheria, a contagious disease. Mrs. Russell had doubts whether it was diphtheria. If it was, it was a very peculiar and unusual form of the disease. The plaintiff was not informed by any one that it might be diphtheria, and was left in ignorance in regard to it until she developed that disease a few days after she was put in charge of the case.

Under the declaration, the plaintiff claimed that she was entitled to a verdict against the hospital for its negligence in not notifying her that the case might be diphtheria, and against Mrs. Russell for her personal negligence in assigning her to the case and for malpractice. At the close of the evidence both defendants moved that verdicts be directed in their favor. The motions were denied, and they excepted.

*Henry F. Hollis*, for the plaintiff.

*John H. Albin* and *William H. Sawyer*, for the defendants. It will be useful to examine, at the outset, the difference between the ordinary corporation established for business purposes, looking

to a division of profit among stockholders, and a corporation having no stock or stockholders, but existing solely that it may receive, hold, administer, and distribute perpetually a fund to charitable uses.

The defendant maintains no business enterprise; it is not a body organized for expected gain. The members of the corporation have not the slightest expectation of personal profit in it. All its property is held, all its corporate affairs are conducted, all the corporate agents are employed, solely for the purpose of aiding and assisting worthy and dependent women and children who wish to be under the care of women physicians and attendants. In the fulfilment of this object the plaintiff participated, as one of the pupil nurses in the defendant's training school for nurses, and also by her service in families outside of the hospital, the pay for which went into the general funds of the hospital. She constituted a part of the means for attaining the objects of the incorporation, and at the same time was a recipient of its bounties as a full equivalent for her services.

In *Downes* v. *Hospital*, 101 Mich. 555, the defendant corporation is thus described in the opinion: "The corporators receive no compensation or dividends. It is purely an eleemosynary institution, organized and maintained for no private gain, but for the proper care and medical treatment of the sick." The action was by an administratrix for the death of her intestate. The declaration alleged that the defendant contracted to properly care for the intestate, and negligently caused his death by failing to give him proper care. In affirming an order directing a verdict for the defendant, the court said: "If the contention of the learned counsel for the plaintiff be true, it follows that the charity or trust fund must be used to compensate injured parties for the negligence . . . of physicians employed to treat patients, and of nurses and attendants. In this way the trust fund might be entirely destroyed and diverted from the purpose for which the donor gave it. Charitable bequests cannot be thus thwarted by negligence for which the donor is in no manner responsible. If, in the proper execution of the trust, a trustee or an employee commits an act of negligence, he may be held responsible for his negligent act; but the law jealously guards the charitable trust fund, and does not permit it to be frittered away by the negligent acts of those employed in its execution."

*Perry* v. *House of Refuge*, 63 Md. 20, was an action brought by an infant inmate of the institution, through his next friend, for assault and battery, the plaintiff having been severely beaten by teachers employed in the institution. The direction of a verdict for the defendant was sustained by the court of appeals, in an

opinion in which they reviewed many authorities, both English and American, coming to the conclusion that damages cannot be recovered from a fund held in trust for charitable purposes, but can be recovered from the wrongdoer.

In *Williamson* v. *Industrial School*, 95 Ky. 251, the defendant was an incorporated reform school, subject to legislative control and maintained by taxation and state aid. The action was brought by an infant inmate for assault and battery. The court based their decision sustaining the general demurrer upon the ground that the defendant was a charity whose funds were contributed and controlled solely for charitable purposes, saying: " If the funds of these institutions are to be diverted from their intended beneficent purposes, by lawsuits and judgments for damages through negligent or malicious servants, their usefulness—indeed, their existence—will soon be a thing of the past."

In *Fire Insurance Patrol* v. *Boyd*, 120 Pa. St. 624, the court say: " The Insurance Patrol is a public charity; it has no property or funds which have not been contributed for the purposes of charity, and it would be against all law and all equity to take those trust funds, so contributed for a special, charitable purpose, to compensate injuries inflicted or occasioned by the negligence of the agents or servants of the patrol."

There is another line of cases, largely hospital cases, which do not go so far in exemption from liability as those quoted from, in point of law, but which reach the same result. In substance they deny the application of the doctrine of *respondeat superior* to an eleemosynary institution.

In *Hearns* v. *Hospital*, 66 Conn. 98, the defendant was incorporated by special act, but it had no capital stock and its members derived no profit from the corporation. The plaintiff brought his action to recover for injuries caused by negligent treatment while a patient. The court say: " The law which makes one responsible for an act not his own, because the actual wrongdoer is his servant, is based on a rule of public policy. The liability of a charitable corporation for the defaults of its servants must depend upon the reasons of that rule of policy, and their application to such a corporation. . . . The practical ground on which the rule is based is simply this: On the whole, substantial justice is best served by making a master responsible for the injuries caused by his servant acting in his service, when set to work by him to prosecute his private ends, with the expectation of deriving from that work private benefit. . . . We are asked to extend the rule, and to declare a new public policy, and say: On the whole, substantial justice is best served by making the owners of a public charity, involving no private profit, responsible

not only for their own wrongful negligence, but also for the wrongful negligence of the servants they employ only for a public use and a public benefit. We think the law does not justify such extension of the rule of *respondeat superior*."

*McDonald* v. *Hospital*, 120 Mass. 432, was an action for injuries alleged to have been caused by negligent surgical treatment of the plaintiff. In overruling the plaintiff's exception to a direction of verdict for the defendant, the court say : "The defendant was a public charitable institution under the laws of the commonwealth. The object for which it was incorporated was to provide a general hospital for sick and insane persons. . . . If there has been no neglect on the part of those who administer the trust and control its management, and if due care has been used by them in the selection of their inferior agents, even if injury has occurred by the negligence of such agents, it cannot be made responsible. The funds entrusted to it are not to be diminished by such casualties, if those immediately controlling them have done their whole duty in reference to those who have sought to obtain the benefit of them." The case was subsequently referred to with approval in *Benton* v. *Hospital*, 140 Mass. 13 ; *Donnelly* v. *Association*, 146 Mass. 163 ; *Newcomb* v. *Protective Department*, 151 Mass. 215 ; *Chapin* v. *Y. M. C. A.*, 165 Mass. 280 ; *Lessard* v. *Revere*, 171 Mass. 294.

The New York courts adhere to the same doctrine. *Van Tassell* v. *Hospital*, 15 N. Y. Supp. 620 ; *Haas* v. *Society*, 26 N. Y. Supp. 868 ; *Ward* v. *Hospital*, 50 N. Y. Supp. 466 ; *Collins* v. *Medical School*, 59 N. Y. App. Div. 63 ; *Joel* v. *Hospital*, 89 Hun 73.

The same limitation is applied in the federal court. In *Powers* v. *Hospital*, 109 Fed. Rep. 294, Mr. Justice *Lowell* says: "One who accepts the benefit either of a public or of a private charity enters into a relationship which exempts his benefactor from liability for the negligence of his servants in administering the charity ; at any rate, if the benefactor has used due care in selecting those servants."

The defendant, in applying ten dollars a month from its assets to an allowance for the personal expenses of its pupil nurses and an indefinite sum otherwise to their support and education, whereby they are fitted to become attendants upon the sick, is but administering the charity for which it was created ; while the services of such pupils in this hospital and the earnings from their services outside, which go to increase the general funds of the association, but enlarge its capacity to do charitable work. The pupil nurses, to the extent of their support and education, are the recipients of the bounty of the association, receiving benefits

which in time increase very materially their earning capacity, and at the same time provide a supply of women attendants having the special knowledge and skill to attend upon sick and suffering humanity. To class them as the servants of this association we think is a mistake. The element of obedience to the hospital and school, provided for by the agreement which the pupil signs when entering, is essential to their education, and entirely distinguishable from the ordinary control of the master over the servant. The establishment of lectures and demonstrations, the providing of manuals and text-books, the examinations from the time of entrance to the completion of the course, and the giving of diplomas to those found qualified, are all elements entirely foreign to the relation of master and servant as ordinarily understood. If, in the opinion of the court, the relation of master and servant seems to exist, then we have only to suggest that the law as to assumption of risks applies to these parties as fully as to the relation of master and servant in other walks of life ; and that one of the ordinary risks attendant upon the occupation of nursing is the error of judgment which a doctor is apt to make in diagnosis.

WALKER, J. The plaintiff's declaration combined three causes of action: one against the hospital for its negligence in not notifying her of the danger of her situation in performing the duties of a nurse, one against Mrs. Russell for her personal negligence in inducing the plaintiff to assume the performance of those duties under the circumstances, and one against Mrs. Russell for professional malpractice in attending the plaintiff after she had contracted the disease of diphtheria. The jury returned a verdict against the hospital and a verdict for Mrs. Russell, finding substantially that while the hospital was negligent as alleged, Mrs. Russell, its representative and manager, who actively directed the plaintiff to assume the danger complained of, was not negligent in that respect, and that she was not guilty of subsequent malpractice. If there is an apparent inconsistency between the first and second findings, a point upon which no opinion is expressed, neither party is in a position, as the case is here presented, to take advantage of it as a ground for setting aside one verdict and sustaining the other. If the supposed inconsistency existed, it would show that there had been a mistrial, and the result would be that both verdicts would be set aside and a new trial granted upon the first two issues raised in the declaration. The verdict upon the third issue in relation to Mrs. Russell's malpractice, having been fairly tried, would be unaffected by that result. But neither party moved in the superior court to have the verdicts set aside upon the ground of a mistrial, nor does either now urge that dis-

position of the case. Each seeks to preserve so much of the jury's action as is favorable to that side and to reject the rest. Under such circumstances both verdicts must stand, so far as this objection.to them is concerned, even if they are inconsistent. If the parties are satisfied, the court will not complain.

The defendant's suggestion that the verdict in favor of Mrs. Russell is a special verdict or finding that there was no negligence on the part of the hospital, and hence that it controls the general verdict against the latter (*Richardson* v. *Weare*, 62 N. H. 80; *Folsom* v. *Railroad*, 68 N. H. 178), is untenable, since no way is discoverable by which to determine that one of the verdicts is general or special rather than the other. If· it is true that upon the evidence the actionable negligence of the hospital was also the actionable negligence of Mrs. Russell, and that a finding of her freedom from fault is necessarily equivalent to a finding that the hospital was not guilty, it is equally true, on the other hand, that the verdict of guilty against the hospital establishes the guilt of Mrs. Russell. The difficulty encountered is that there is nothing upon which to predicate the assertion that one of the findings is general and the other special. Both must stand or fall together.

The principal contention relates to the liability of the hospital in an action of tort for negligence. A motion was made in the superior court in behalf of the hospital that a verdict be directed in its favor; the motion was denied, subject to exception. Broadly stated, the question thus presented is whether there was any competent evidence from which it could be found that the defendant hospital was guilty of a breach of duty toward the plaintiff, which was the proximate cause of her injury. If there was, the case was properly one for the jury; if there was not, the defendant was entitled to a verdict and its motion should have been granted. In support of the motion, it is urged that the corporate character of the defendant is such that it owed no duty to the plaintiff for the breach of which it can be held liable in an action of tort. Since the legal doctrine of negligence assumes as its basis or necessary premise the existence of a legal duty due ·from the alleged wrongdoer to the injured party, it is important to ascertain what the relations of the parties were and what resulting obligations existed between them.

There can be little, if any, doubt that the hospital is what is known in the law as a charitable or eleemosynary institution. The purposes for which it was incorporated, according to the articles of association, were " to establish and maintain hospitals and homes, and otherwise aid and assist worthy and dependent women and children who wish to be under the care of women physicians and attendants." It has no capital stock, and no pro-

vision is made for a division of profits. Whatever property it owns is devoted to the support and management of the institution in the care of sick and dependent women and children, who pay for the benefits received according to their ability; and the money so received is used in paying the necessary expenses incident to such an institution. Its evident purpose is to aid and relieve the sick as economically as possible for the kind of attention provided, and not, like an ordinary business corporation, to earn or accumulate an income for division among its members. Indeed, it is not seriously contended that it is not a charitable corporation, or that it is not entitled to all the immunities legally incident to institutions of that character. But it is insisted that the law does not exempt it from liability for its failure to use reasonable care for the safety of its employees or servants; in other words, that the law imposes the same duty upon it in this respect that it imposes upon individuals and business corporations. The vital question is whether this contention is sound.

The defendant corporation was formed under the general incorporation law, which authorizes five or more persons to associate together to form a corporation for "the establishment and maintenance of hospitals." P. S., c. 147, s. 1. Section 4 provides that "such corporation, its officers and stockholders, shall have all the rights and powers and be subject to all the duties and liabilities of other similar corporations, their officers and stockholders, except so far as the same are limited or enlarged by this chapter." The chapter contains no express provision limiting or enlarging "the duties and liabilities" of hospitals, in any respect material to the present inquiry. If they are exempt from liability in cases of this character, the legislative intention to that effect, which determines their powers and duties, must be found inferentially from a consideration of the peculiar purposes they were formed to accomplish. Their powers and duties are the same as those of "other similar corporations."

It should be noted in this connection that the defendant was not incorporated for the purpose of carrying out the provisions of an express trust in reference to property or money donated under a limited deed of trust. It holds its property under its charter for the general purposes of a hospital. It is a charitable institution whose powers and duties in the management and expenditure of its funds is unlimited, except so far as they are governed and defined by the general charitable purpose of its incorporation. It is therefore unnecessary to consider what its legal liability might be if it held funds upon a trust which expressly or by necessary inference exempted them from being appropriated to the payment of damages suffered through the negligence of its officers or ser-

vants. Many of the cases which either hold or state argumenta- tively that a charitable body is not liable for its torts, proceed upon the theory that its funds are held upon a special trust, that to use them for the payment of damages in an action of tort against it would be an unwarranted diversion thereof, and that such an action is not maintainable because it would be entirely futile. Such seems to be the doctrine of, although not necessarily the holding in, *Heriot's Hospital* v. *Ross*, 12 C. & F. 507. In that case Lord *Cottenham* says with reference to the payment of dam- ages for the tort of a charitable body (*p.* 513): "It is obvious that it would be a direct violation, in all cases, of the purposes of a trust, if this could be done; for there is not any person who ever created a trust fund that provided for payment out of it of damages to be recovered from those who had management of the fund. No such provision has been made here. There is a trust, and there are persons intended to manage it for the benefit of those who are to be the objects of the charity. To give damages out of a trust fund would not be to apply it to those objects whom the author of the fund had in view, but would be to divert it to a completely different purpose." In *Powers* v. *Hospital*, 109 Fed. Rep. 294, 302, it is said that if this case "is rested upon a doc- trine that under no circumstances can a trust fund be held liable for torts committed in its management, it stands alone in Great Britain "; and that doctrine is repudiated in the subsequent case of *Mersey Docks* v. *Gibbs*, L. R. 1 H. L. 93. See, also, *Gilbert* v. *Trinity House*, 17 Q. B. Div. 795. It would seem to be entirely unnecessary to discuss a proposition so barren of arguments in its favor. That a charitable institution has certain duties to perform toward those with whom it is associated, which it cannot violate with impunity, in the absence of some express exemption of a legislative character, is not debatable. The sanctity of its general· trust fund or property does not make that result necessary or, on grounds of public policy, desirable. The liability of charitable corporations in actions of tort is frequently enforced. *Stewart* v. *Harvard College*, 12 Allen 58; *Davis* v. *Society*, 129 Mass. 367; *Bishop* v. *Bedford Charity*, 1 E. & E. 697; *Gilbert* v. *Trinity House*, 17 Q. B. Div. 795. Cases, also, like *McDonald* v. *Hospi- tal*, 120 Mass. 432, which deny the liability of the defendant to a patient for the negligence of the attending physician or surgeon, seem to concede that if the corporate officers have been negligent in selecting subordinate agents, the defendant may be liable for injuries occasioned by the negligence of the latter while attending to the corporate business. If the language of some courts is broad enough to deny the liability of charitable corporations in all actions of tort (*Perry* v. *House of Refuge*, 63 Md. 20; *Downes* v.

*Hospital*, 101 Mich. 555; *Williamson* v. *Industrial School*, 95 Ky. 251), it cannot be regarded as a discriminating statement of the law upon that subject.

Since the defendant has no absolute exemption from being sued for some torts it may be guilty of, the question recurs whether its character as a charitable institution furnishes a sufficient reason for its exemption in this case. In other words, why did it not owe in a legal sense the duty of a master to the plaintiff while employed in its affairs? Whether the general rule of *respondeat superior* applies to it as to a business corporation or individual, may be an interesting question, but it is not material to the present inquiry. If it owed the absolute, non-delegable duty of a master to the plaintiff, it cannot escape liability by showing that the negligent act which caused the plaintiff's injury was the act of a servant, or raise the question of its liability for the collateral negligence of its servant under the rule of *respondeat superior*. Upon this assumption, cases holding that a charitable corporation is not responsible under that rule of law are not in point. A few examples are *Hearns* v. *Hospital*, 66 Conn. 98; *Fire Insurance Patrol* v. *Boyd*, 120 Pa. St. 624; *Coe* v. *Wise*, 5 B. & S. 440, 453; *Hall* v. *Smith*, 2 Bing. 156; *Duncan* v. *Findlater*, 6 C. & F. 894. Nor are cases in point that substantially deny the applicability of that rule to public or *quasi*-public corporations exercising governmental powers, upon the ground that they are charitable corporations, like *Metcalfe* v. *Hetherington*, 11 Exch. 257, and *Mersey Docks* v. *Gibbs*, L. R. 1 H. L. 93. The defendant does not perform governmental functions, and the reasons for the limited liability of municipal bodies for the torts of their servants have no application to corporations like the defendant. *O'Brien* v. *Derry*, *ante*, p. 198; *Wheeler* v. *Gilsum*, *ante*, p. 429. Its charity may be public, but it is in no proper sense an agency of the state.

The duties of the defendant to the plaintiff when she was employed to nurse a diphtheria patient had their inception in the contract of employment. She was engaged to do a necessary part of the work of maintaining a hospital for the sick. For this labor she was paid. If she was an apprentice receiving small remuneration in money, in consideration of the instruction and experience she received in practical nursing, she was none the less an employee of the defendant. An apprentice learning a trade occupies the position of a servant with reference to his employer, and obviously the latter's duty to inform him of the dangers of his occupation is greater than in the case of an experienced workman. While performing the necessary work of nursing in the institution, the plaintiff was not, like a patient, the recipient of the defendant's charity. *McDonald* v. *Hospital*, 120 Mass. 432; *Gla-*

*vin* v. *Hospital*, 12 R. I. 411; *Hearns* v. *Hospital*, 66 Conn. 98; *Powers* v. *Hospital*, 109 Fed. Rep. 294. She was doing the defendant's proper work, under its direction and for its benefit in the discharge of its assumed duties. She was as much an employee of the hospital in respect to this particular work as she would have been if she had been a graduate nurse receiving full nurse's pay. The fact that at the time she was employed she represented herself to be older than she was did not relieve the defendant of its ordinary duty to her as its servant. Her apparent youthfulness, general intelligence, and practical experience in nursing were facts for the consideration of the jury upon the question of the degree of care the defendant was bound to exercise. Whether she was in fact as old as she claimed to be, or appeared to be, was not a question of controlling importance. The finding of the jury that she was its servant or employee was amply supported by the evidence.

If she had been employed by an individual to attend a member of his family afflicted with small-pox of which he had knowledge, but of which he did not inform her, and she took the disease without fault on her part and suffered damage therefrom, it would not be seriously denied that he was guilty of actionable negligence in not informing her of the danger to which he exposed her. It was his duty arising from his employment of her, or from the contractual relation of master and servant existing between them, to warn her of the danger incident to the service which he knew or under the circumstances ought to have known, and of which he knew she was ignorant, though in the exercise of ordinary care. And this duty is a non-delegable one. *Hamel* v. *Company, ante, p.* 386; *English* v. *Amidon*, 72 N. H. 301; *Wallace* v. *Railroad*, 72 N. H. 504, 514. To say that a similar duty was not imposed upon the defendant for the benefit and protection of the plaintiff, because it is a charitable corporation, is to relieve such corporations from the reasonable obligation of exercising the care ordinarily required of, or contractually assumed by, men in general in the prosecution of their legitimate business. The necessity for such an exceptional holding is not apparent. Since the property of the defendant is held for the general purpose of maintaining a hospital, without other specific limitation, it is no more exempt from being appropriated to the payment of damages occasioned by the negligence of the hospital than is the property of an individual, which he holds for commercial or charitable purposes, for the consequences of his negligence. In conducting the affairs of a hospital, its officers and agents are as liable to commit acts of negligence as are the officers and agents of a railroad or other business corporation. Men in general are not uniformly careful.

Experience shows that negligence—the failure to exercise ordinary care—is to be expected when men engage in industrial pursuits. It may, not inappropriately, be said to be necessarily incidental in the accomplishment of most practical results through the agency of men. The donors of the defendant's property for hospital purposes were not ignorant of this fact, and are presumed to have given the trust property knowing that it might be required for the liquidation of claims in tort as well as for claims in contract, incurred in carrying out the purposes of the corporation. Indeed, its conceded authority to contract for the employment of nurses and other necessary agents would seem to include power to respond in damages for all breaches of such contracts, one essential or incidental element of which is its duty to exercise care as well as its duty to pay the stipulated compensation. No conditions were imposed upon the defendant, either by its charter or by the donors of its property, by which the contracts of employment it was obliged to make with its servants should have a different effect from that usually given to such contracts, or that the relations between it and its employees should be legally different from those usually subsisting between master and servant. There is, therefore, no substantial reason for holding that it did not owe the duty to the plaintiff of warning her of the dangers of her employment, under the law as applied to the ordinary relation of master and servant. In this respect, the legislature has not invested it, either expressly or inferentially, with peculiar powers.

The defendant further claims that the evidence was not sufficient to warrant a finding of negligence on its part. This position, stated in more specific language, is that the evidence is so meager and inconclusive that the court must hold that reasonable men acting as jurors could not reasonably draw the inference from the evidence that the defendant violated its duty to inform the plaintiff of the danger of her employment. It is not for the court to determine the weight of the evidence. Upon the assumption that the evidence for the plaintiff is true, the question for the court is whether it is logically and legally sufficient to support a finding by the jury in favor of the plaintiff upon a material issue. The weight and reliability of competent evidence is to be determined exclusively by the jury. It is unnecessary, upon this point, to review the evidence at length. It is sufficient to state that it tended to show that one of the patients whom the plaintiff nursed had a form of diphtheria, that a culture taken from this patient and examined by a bacteriologist contained diphtheria bacilli, and that Mrs. Russell, the physician in charge of the patient and manager of the hospital, was duly informed of the result of the examination. If the jury found these facts to be true, they were

warranted in the conclusion that the hospital had notice of the contagious character of the patient's disease, and that it was its duty, acting as ordinarily prudent men would have acted under the same circumstances, to disclose the danger to the nurse who was ignorant of its existence.    Whether the hospital, through Mrs. Russell, used ordinary prudence in this respect may be a debatable question upon the evidence reported.    Her conduct may be explainable upon a theory consonant with due care, or upon a theory showing the absence of due care; and it is exclusively the province of the jury to determine which is the true one.    As they have upon competent evidence adopted the latter theory, their finding is conclusive.    The court cannot say that reasonable men could not come to that conclusion, or that a reasonable doubt in the mind of Mrs. Russell, in her diagnosis of the patient's disease, as to its true character, would justify her, who as the representative of the hospital was bound to exercise reasonable care for the plaintiff's safety, in omitting to inform the plaintiff that the disease might be of a diphtheritic character.    The hospital might be bound to warn the plaintiff before Mrs. Russell had reached a satisfactory diagnosis.    The motion to direct a verdict for the defendant was properly denied.

Certain exceptions were taken by the defendant to the charge to the jury and to the denial of requests to charge; but the foregoing discussion renders it unnecessary to further consider the points raised.    Nor are the exceptions to the remarks of the plaintiff's counsel in argument tenable.    Counsel did not, so far as the case shows, exceed the limits of the legitimate argument.

*Exceptions overruled: judgment on the verdicts.*

All concurred.