Richard F. HEIMBUCH, Plaintiff,

v.

PRESIDENT AND DIRECTORS OF GEORGETOWN COLLEGE, a corporation, Defendant.

Richard F. HEIMBUCH, Plaintiff,

v.

Emmett F. BYRNE, Jr., Defendant.

Civ. A. Nos. 2211-61, 1041-63.

United States District Court
District of Columbia.

March 10, 1966.

Marshall E. Miller, of Danzansky & Dickey, Washington, D. C., for plaintiff.

Albert F. Beasley, Washington, D. C., for defendant, President and Directors of Georgetown College, a corporation.

J. Roy Thompson, Washington, D. C., for defendant, Emmett F. Byrne, Jr.

MATTHEWS, District Judge.

The sole question before the court is whether the corporate defendant as a charitable institution is immune from liability in a tort action brought by plaintiff, who was seriously injured in a hazing activity while a freshman at Georgetown University. The University is one of the charitable activities conducted by the corporation. The corporate defendant will be referred to herein as Georgetown.

In addition to the action against Georgetown, plaintiff has filed an action

against Emmett F. Byrne, Jr., a sophomore participant in the hazing activity in which plaintiff was injured. The two actions have been consolidated.

The plaintiff alleges that Georgetown negligently arranged or knowingly permitted a dangerous and hazardous physical activity known as hazing of freshman students by members of the sophomore class, including a sophomore hazing committee; that Georgetown failed to supervise or improperly supervised such hazing activity; that pursuant to this activity plaintiff was a member of a group of freshmen who were directed or compelled by members of the sophomore hazing committee to leave their dormitory and move in a long line in an awkward and ungainly posture known as the "elephant march" over various portions of Georgetown's campus toward the athletic field where they were to be subjected to a "mud bath"; that during the course of the "elephant march" the line of freshmen students broke formation and thereupon plaintiff was forcibly tackled or struck from the rear by defendant Byrne, and was caused to fall violently to the ground, and to suffer serious and permanent injuries, among them an oblique fracture of the shaft of the left femur, a flexion deformity in the left hip and a conspicuous atrophy of the left thigh.

Georgetown asserts that it was operating the University in its capacity as an eleemosynary corporation; that plaintiff as a student enrolled at the University was a beneficiary of Georgetown, that therefore Georgetown "is exempt from any liability or legal responsibility to plaintiff." The defendant Byrne also relies on the defense of charitable immunity to such extent as plaintiff alleges that Byrne was acting as Georgetown's agent at the time plaintiff was injured.

Due to plaintiff's challenge of the applicability in the District of Columbia of the defense of charitable immunity, the court (Chief Judge McGuire) entered an order requiring that prior to trial on the merits a hearing be held for the sole purpose of determining whether the doctrine of charitable immunity from tort liability is available in the District of Columbia. Pursuant to that order this court has held such a hearing at which evidence was adduced, followed by argument of counsel. Accordingly the immunity issue is now before the court for determination.

At the time of the occurrence complained of plaintiff was paying the usual charges made to freshman students for board, tuition and incidentals. With an additional charge for making payment in three installments per semester, these charges amounted to $1808 for the 1956–1957 academic year; and were increased from year to year during plaintiff's attendance as a student at Georgetown to $2015 for the 1959–1960 academic year. The Auditor for Georgetown and the certified public accountant who audited Georgetown's books and records testified that these charges did not fully compensate Georgetown for the expense of the facilities and services furnished by it to plaintiff as a student. Also, Georgetown put on proof of overall operating expenses and operating income, and showed that such expenses exceeded such income. This showing included a specific showing of the operating results of the College of Arts and Sciences, which plaintiff attended as a freshman at the time of the occurrence complained of herein. These figures show an "Operating Deficit" for each of the years in which plaintiff attended Georgetown, and that such deficit was substantially offset by gifts from alumni and others and earnings on endowment and general reserve funds. But the showing made by Georgetown did not include the "per student" cost or expense, nor the number of students attending the College of Arts and Sciences from which the per student cost or expense might be ascertained; and the showing made does not define what is included within the terms "Operating Income" and "Operating Expenses". The evidence indicates that fees to members of the clergy were waived and scholarships granted, without any indication as to how they might be reflected in operat-

ing expenses; and there was evidence that Georgetown owns and maintains property not presently utilized in its charitable activities, without any indication as to whether rents from, and repair and maintenance of, such properties are included within "operating" income and expenses. By reason of these uncertainties, the Court is not satisfied that Georgetown has shown that the sums paid by plaintiff did not adequately compensate Georgetown for the facilities and accommodations furnished to him.

Georgetown carried a policy or policies of liability insurance at the time plaintiff was injured. The premiums paid thereon were approximately $30,000 to $40,000 per year.

The leading case if not the pioneer case in the United States for the doctrine of charitable immunity is McDonald v. Massachusetts General Hospital, 120 Mass. 432, decided in 1876, hereinafter referred to as *McDonald*. In that case a corporation, established for the maintenance of a public charitable hospital, was sued by a workman—a charity patient—who claimed that his fractured thigh bone was negligently and improperly set. The sole authority relied upon by the court for its decision that the plaintiff had no remedy against the corporation was the English case of Holliday v. St. Leonard, 11 C.B. (N.S.) 192, decided in 1861. When the court in *McDonald* judicially created or resurrected and imported into this country the charitable immunity doctrine the English case on which *McDonald* rested had been judicially repudiated for some years in England and had not been thereafter revived by judicial or legislative action. Tucker v. Mobile Infirmary Ass'n, 191 Ala. 572, 68 So. 4, L.R.A.1915D, 1167 (1915) and the English cases there cited. Friend v. Cove Methodist Church, Inc., 65 Wash.2d 155, 396 P.2d 546, 551 (1964). Nevertheless, according to legal authorities, *McDonald* was relied on in many subsequent cases for upholding the charitable immunity doctrine. Mississippi Baptist Hospital v. Holmes, 214 Miss. 906, 55 So.2d 142, 152, 56 So.2d 709 (1951). Annotation, 25 A.L.R.2d 29, 39. Avellone v. St. John's Hospital, 165 Ohio St. 467, 135 N.E.2d 410, 412 (1956). Parker v. Port Huron Hospital, 361 Mich. 1, 105 N.W.2d 1, 6 (1960). Kojis v. Doctors Hospital, 12 Wis.2d 367, 107 N. W.2d 131, 132 (1961). Flagiello v. Pennsylvania Hospital, 417 Pa. 486, 208 A.2d 193, 199 (1965).

Dean Prosser in his handbook on the law of torts states that prior to 1942 "only two or three courts had rejected the immunity of charities outright"; that in the year 1942 "a devastating opinion of Judge Rutledge in the Court of Appeals of the District of Columbia reviewed all the arguments in favor of the immunity and demolished them so completely as to change the course of the law"; that it "has been followed by a flood of recent decisions holding that a charity is liable for its torts to the same extent as any other defendant" (citing cases); and that the "immunity of charities is clearly in full retreat." Prosser, Law of Torts, 2d ed. 1955, pp. 787, 789.

The District of Columbia case to which Dean Prosser referred is President and Directors of Georgetown College v. Hughes, 76 U.S.App.D.C. 123, 130 F.2d 810, hereinafter referred to as *Hughes*.[1] The plaintiff in that case was a special nurse employed by a paying patient at a hospital operated by a charitable corporation. She was seriously and permanently injured by the negligent act of an employee of the hospital. The trial court (reserving the question of liability of the charitable corporation to a beneficiary of the charity) held that the plaintiff was a stranger to the charity in a legal sense, submitted to the jury the issue of negligence, and the jury found for the plaintiff. On appeal the court unanimously affirmed the judgment of the trial court but equally divided on the theory of the charitable corporation's liability.

1. At the trial level this case was known as Hughes v. President and Directors of Georgetown College. The opinion of Justice Proctor therein is found in D.C., 33 F.Supp. 867.

Three judges—Chief Justice Groner, Justice Stephens and Justice Vinson—were of the opinion that plaintiff was a stranger to the charity and hence was entitled to recover for the negligent act of the hospital's employee. Three other judges —Justice (Justin) Miller, Justice Edgerton and Justice Rutledge—were of the opinion that whether the plaintiff was stranger or beneficiary charitable corporations are liable for negligence the same as other persons and corporations.

■ It is argued by the attorney for Georgetown that the *Hughes* ruling does not bar the charitable immunity defense in the instant case because the plaintiff here is the charity's beneficiary, that is, Georgetown's beneficiary, while in *Hughes* the plaintiff was a stranger to the charity. This argument, however, is not well founded. Georgetown was so substantially compensated by plaintiff that he may not be deemed a "beneficiary" of Georgetown's charity but must be regarded as a stranger thereto in a legal sense.

In 1956 a somewhat similar ruling was made by the Supreme Court of New Jersey in Lindroth v. Christ Hospital, 21 N.J. 588, 123 A.2d 10. There the plaintiff in a negligence action was a surgeon who had been injured in the fall of a hospital elevator. As a surgeon he had use of the hospital facilities but rendered administrative services to the hospital and donated surgical services to its needy patients. The surgeon's patients paid the hospital for their care. The charitable immunity doctrine being raised by the charitable corporation operating the hospital, the court denied its applicability, holding that the surgeon was not a beneficiary of the charity but a stranger thereto within the principle of immunity of charitable corporations to negligence claims of their beneficiaries.

■ Assuming *arguendo* in the instant case that the plaintiff was a beneficiary of Georgetown as Georgetown claims, nevertheless, in the opinion of the court he is entitled to maintain this action against Georgetown. In other words, the court agrees with the view expressed by Mr. Justice Rutledge in *Hughes* that it does not matter whether the plaintiff is stranger or beneficiary a charitable corporation should respond as do private individuals, business corporations and others, if it is negligent. 76 U.S.App.D.C. 123 at page 141, 130 F.2d 810.

■ The doctrine of charitable immunity from tort liability not being applicable in the District of Columbia, the actions instituted by the plaintiff should be tried by a jury on the issue of negligence.

This opinion is to serve as findings of fact and conclusions of law as to the one issue before the court for determination. An appropriate proposed order should be submitted by the attorney for plaintiff.