421 P.2d 745

Jon BELL, by his next friend Jeanne Albrecht, and Jacob Albrecht and Jeanne Albrecht, husband and wife, Plaintiffs-Appellants,

v.

The PRESBYTERY OF BOISE, a non-profit corporation, and Second United Presbyterian Church of Boise, Defendants-Respondents.

No. 9711.

Supreme Court of Idaho.

Dec. 28, 1966.

———◆———

Anderson, Kaufman & Anderson, Boise, for appellants.

Elam, Burke, Jeppesen & Evans, Boise, for respondents.

SPEAR, Justice.

In appellants' complaint they allege that the Presbytery of Boise is a non-profit corporation organized in Idaho, affiliated with the United Presbyterian Church of the United States, and is the governing board presiding over, and responsible for, a group of Presbyterian churches within its jurisdiction in southwestern Idaho and eastern Oregon, one of which is respondent, Second United Presbyterian Church of Boise; that as a part of its organized and sponsored programs, the church undertakes certain fellowship activities, among which was included for the Junior High Fellowship Group a supervised outing on Tablerock, a well-known promontory just east of Boise, and that Jon Bell was one of the group of children in attendance at this outing; that as a part of this activity, the children, nine in number, were accompanied by five adults acting for, and on behalf of, the church but no paid employees of the church nor the minister were directly involved, and it was the purpose of these adults to supervise, safeguard and protect the children from harm; that Tablerock constitutes a place of danger, particularly to children, and on March 30, 1963, the day in question, the supervising adults permitted the children of junior high school age to run on ahead and proceed to the top of Tablerock, unaccompanied by adults; that Jon Bell fell from a precipitous rock wall facing of Tablerock and suffered severe and permanent physical injury for which appellants, Jacob and Jeanne Albrecht have incurred considerable expense for medical treatment and other kindred services, and will continue to do so in the future; that the injury suffered by Jon Bell and the expenses incurred by the Albrechts resulted from the negligence of the accompanying and supervising adults in permitting the children to proceed to the top of Tablerock alone, and that said adults at the time in question were then and there acting for, and on behalf of, the church, a member of the Presbytery.

Respondents answered generally denying all allegations of negligence and agency and

asserted the affirmative defense of the charitable immunity of the church. After some preliminary motions appellants were permitted to file an amended complaint which in essence was the same as the original complaint but contained an additional paragraph asserting that during all times involved respondents were insured under a policy of comprehensive liability insurance which protects respondents from any liability which might be imposed as a result of this action to the extent of $100,000.00; that said policy contains a medical payment endorsement covering bodily injury to the extent of $250.00 per person; that respondents' company had paid that amount on the medical expenses incurred by appellants; and that the ownership of such comprehensive liability insurance policy and the coverage thereunder constitutes a waiver of any immunity respondents might have or claim as a charitable organization to the extent of the coverage, i. e., $100,000.00, and additionally that payment by respondents and their insurer under the medical payment endorsement provision of the policy constituted a waiver of any claim of charitable immunity.

Upon motion of respondents this paragraph was stricken from the amended complaint and in their answer thereto respondents again set forth the charitable character of respondents; asserted that beneficiaries of such charity could not maintain an action of this nature and raised the additional defenses of agency, contributory negligence and assumption of risk, these latter three defenses being immaterial on this appeal. Appellants replied to the answer, again alleging the insurance coverage. Thereafter respondents filed their motion for summary judgment based solely on the defense of charitable immunity, and this motion was granted by the trial court and judgment was entered in favor of respondents accordingly.

On this appeal there are only two questions involved: (1) are appellants precluded from bringing this action by reason of the doctrine of charitable immunity, and (2) if such immunity does apply has it been waived by reason of the purchase and existence of the general liability insurance and the payment to appellants of the medical coverage provided in the policy?

It is pointed out if the first question is answered in the negative, no discussion of the second question is necessary.

It is our opinion that the doctrine of charitable immunity should no longer be accorded recognition in the State of Idaho, so the judgment of the trial court must be reversed.

The history of the doctrine of charitable immunity is especially well set forth in Presidents and Directors of Georgetown College v. Hughes, 76 U.S.App.D.C. 123, 130 F.2d 810 (1942), and an exhaustive annotation in 25 A.L.R.2d 29, 38. A study of this history indicates the first American decision to follow the immunity doctrine was McDonald v. Massachusetts General Hospital, 120 Mass. 432, 21 Am.Rep. 529 (1876). In arriving at this decision the Massachusetts court relied upon English decisions which had been thoroughly repudiated in England for about five years prior to the McDonald decision. Nevertheless this decision was widely followed in other American jurisdictions, primarily in their desire to protect charitable funds, and the doctrine of charitable immunity from tort liability became generally established throughout the United States.

There are three primary theories upon which the courts of various jurisdictions based this doctrine, i. e., (1) public policy, (2) protection of trust funds, and (3) an implied waiver by acceptance of benefits. While the vast majority of the courts adopted the doctrine on one, more or all three theories, since 1942, when Judge Rutledge of the United States Court of Appeals for the District of Columbia wrote his devastating opinion in Presidents and Directors of Georgetown College v. Hughes, supra, the courts started receding from the doctrine of immunity for charities. Today by far the majority of all jurisdictions in the United States have either completely re-

pudiated the doctrine or have modified and weakened it materially.

In Idaho two cases, Wilcox v. Idaho Falls L.D.S. Hospital, 59 Idaho 350, 82 P.2d 849 (1938), and Wheat v. Idaho Falls L.D.S. Hospital, 78 Idaho 60, 297 P.2d 1041 (1956), rejected all three classic grounds for charitable immunity, i. e., public policy, trust fund doctrine, and implied waiver by acceptance of benefits, excepting only the *non-paying recipients* of charity under the third category. Now it is time to go all the way and abrogate this doctrine in toto. Personal injury is no less painful, disabling, costly or damage-producing simply because negligent harm is inflicted by a charitable institution rather than a non-charitable one. As the author of one opinion stated:

> "It has not been right, is not now right, nor could it ever be right for the law to forgive any person or any association of persons for wronging any other person." 348 S.W.2d at 932, infra.

This reasoning is equally as applicable to non-paying recipients of charity as to those recipients who are able to pay for the services rendered.

In Wheat v. Idaho Falls L.D.S. Hospital, supra, this court stated:

> "The contrariety of judicial opinion on the subject mentioned by Chief Justice Holden in the Wilcox case, and the reasoning for and against the various theories of liability and immunity, have been thoroughly considered and stated in many jurisdictions. A lengthy review here would not add to the learned discussions already available. We content ourselves with citing authorities which support our conclusion."

To do otherwise in the case at hand would unduly lengthen this opinion, and therefore we merely cite the more recent authorities supporting our conclusion herein. Friend v. Cove Methodist Church, Inc., 65 Wash.2d 174, 396 P.2d 546 (Wash.1964); Malloy v. Fong, 37 Cal.2d 356, 232 P.2d 241 (1951); Hungerford v. Portland Sanitarium · & Benev. Ass'n, 235 Or. 412, 384 P.2d 1009,

(1963); Mullikin v. Jewish Hospital Ass'n of Louisville, 348 S.W.2d 930 (Ky.1961); Darling v. Charleston Community Memorial Hospital, 33 Ill.2d 326, 211 N.E.2d 253 (1965); Meyers v. Drozda, 180 Neb. 183, 141 N.W.2d 852 (1966); Heimbuch v. President and Directors of Georgetown Col., 251 F.Supp. 614 (D.D.C.1966); Widell v. Holy Trinity Catholic Church, 19 Wis.2d 648, 121 N.W.2d 249 (1963); Flagiello v. Pennsylvania Hospital, 417 Pa. 486, 208 A.2d 193 (1965).

Judgment reversed and action remanded to district court for further proceedings. Costs to appellants.

McFADDEN, C. J., and McQUADE, TAYLOR and SMITH, JJ., concur.