No. 12,049.

BROWN *v.* ST. LUKE'S HOSPITAL ASSOCIATION.

Decided January 28, 1929.   Rehearing denied February 18, 1929.

Mr. BENTLEY M. McMULLIN, for plaintiff in error.

Mr. JAMES H. PERSHING, Mr. WM. E. HUTTON, Mr. BRUCE B. McCAY, for defendant in error.

*Department Two.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE refer to the parties as they appear in the lower court.

Plaintiff sued defendant for damages alleged to have been sustained because of the negligence of the defendant in failing to use reasonable care in the preparation for and use of a vapor lamp prescribed for inhalation purposes, resulting in a portion of the contents thereof being projected upon plaintiff's arm, there taking fire and burning her arm and breast. The defendant denied negligence and further denied liability upon the ground that it was a charitable institution. The lower court directed a verdict for the defendant upon two grounds: (1) The evidence was insufficient to warrant a verdict in favor of the plaintiff. (2) The defendant corporation was a charitable institution and under the facts presented was not liable. This ruling of the lower court is now assigned as error.

1. Under our determination of this case, it is not necessary for us to consider the question as to whether or not there was sufficient evidence of negligence in the record to require the lower court to submit the case to the jury.

In support of its contention that it has been from its inception a charitable institution, defendant introduced the articles of incorporation of itself and its predecessor, St. Luke's Hospital. Exhibit 3 is a certified copy of the certificate of incorporation of St. Luke's Hospital filed with the secretary of state, February 15, 1881. Therein

its corporate functions, powers and objects are enumerated as follows:

"I. The corporate name and title by which this society shall be known is 'St. Luke's Hospital', Denver, Colo.

"II. The objects for which this society is founded and incorporated are:

"First: To provide medical and surgical aid and nursing or other care for sick, infirm, aged, injured, or destitute persons.

"Second: To instruct and train suitable persons in the duties of nursing and attending upon the sick.

"Third: To provide the instructions and consolations of religion for those who are under the care of the institution.

"Fourth: Such other purposes incidental and kindred to those above mentioned as the board of managers may prescribe.

"Fifth: To erect, build, or otherwise procure a suitable building or buildings for the purposes aforesaid."

Twenty-four managers are therein provided who are to act as trustees and to manage the affairs of said society.

Exhibit 4 is a certified copy of the certificate of incorporation of the defendant, The St. Luke's Hospital Association, wherein its objects and purposes are as set forth:

"1. To take over, hold, manage, control and dispose of all or any part of the property, real, personal or mixed, now held or possessed by that Colorado institution known as St. Luke's Hospital, in the City and County of Denver, state of Colorado, and to execute and carry out any and every trust with which said property, or any part thereof, has been in any way impressed.

"2. To acquire and, in every lawful way, to dispose of and to use, manage and control, other property, real, personal or mixed, including property which may heretofore have been or which hereafter may be granted, given, devised or bequeathed in any way for the benefit of said institution.

"3. To care for, keep, maintain, control and administer all property in any way acquired or held for the benefit of said institution.

"4. To conduct and operate the institution in the City and County of Denver, state of Colorado, known as St. Luke's Hospital, together with such branches thereof or additions thereto as its board of managers may from time to time establish.

"5. In general, the objects for which this association is founded and incorporated are:

"First: To provide medical and surgical aid and nursing, or other care, for sick, infirm, aged, injured or destitute persons.

"Second: To instruct and train suitable persons in the duties of nursing and attending upon sick, infirm, aged, injured or destitute persons.

"Third: To provide the instructions and consolation of religion for those who are under the care of the association.

"Fourth: Such other purposes incidental and kindred to those above mentioned as the board of managers may prescribe.

"Fifth: To acquire real property and to construct thereon, or otherwise acquire, suitable buildings for the purposes of the association.

"Sixth: To take, hold, manage, care for and administer any property, real, personal or mixed, which may be conveyed, given, devised, or bequeathed to the association; to borrow money; to issue its negotiable securities; to execute mortgages and to do and perform all acts and things needful, proper and lawful in respect to the affairs of the association."

Article 3 provides for a board of managers.

Further the defendant introduced the testimony of Mr. Wordell, a pertinent part of which is here quoted: "I am superintendent of St. Luke's Hospital Association. I have full charge of the hospital affairs. Q. I will ask

you Mr. Wordell, whether any of the business that is conducted under you through the hospital is carried on for the purpose of making a profit? A. No, sir. Q. What is the source of income which maintains the hospital? A. Through some endowments, donations, charity ball, and one thing and another, that are established, the Ladies' Aid Society of the hospital. Q. What if any income is derived from the patients in the hospital? A. Our income is— Q. I mean, do you derive income from the patients in the hospital? A. We do. Q. Do you make charges for rooms and other services? A. Yes. Q. Is all the business of that hospital conducted in the hospital building and on the hospital grounds? A. Yes, sir. Q. Mr. Wordell, would the money that is received from the patients who come to the hospital be sufficient to enable the hospital to operate without donations, or the income from endowments? A. No, it would not.''

It is clearly apparent that St. Luke's Hospital came into being as, and has continued to remain, a charitable institution; that all property held or acquired by it is impressed with a trust for the charitable uses and purposes above mentioned. It is further evident from the testimony of Mr. Wordell that all the business of defendant is conducted on the hospital premises; that the money derived from the paying patients is insufficient to enable the hospital to operate without donations or income from endowments. Therefore, if a judgment were rendered against the defendant and satisfaction thereof had, such procedure would result in the depletion of the funds of said hospital held in trust for charitable purposes.

The question of the liability of a charitable trust for damages caused by the negligence to its employes has been considered by this court in the case of *St. Mary's Academy v. Solomon*, 77 Colo. 463, 238 Pac. 22, 42 A. L. R. 964, and a precedent there established.

In considering such precedent it must be distinctly remembered that therein no testimony was introduced as

to the corporate capacity, objects and purposes of St. Mary's Academy. In that case, after analyzing a great number of conflicting cases in various other jurisdictions, we held that:

"A charitable trust fund may not be depleted by the tort of the trustee but it does not logically follow that no judgment can be rendered against him. He may be liable and yet the trust fund not. In the case of a corporation trustee such as Heriot's Hospital in the English case, supra, which seems to have no powers except to administer the trust fund, it is right to say that no judgment can be rendered against it for negligence. Does it appear that the defendant corporations have only such powers? We find no evidence that their powers are so limited. Their charters are not in evidence. If they were and it appeared that the corporations had no powers but as charitable trustees we should reverse the judgment. The *presumption* is that they have power to hold *other* property. If they have there is no more reason to say they are not liable for torts than to say that a natural person is not because he has no property not exempt from execution. We think that the judgment against these corporations is valid, but that no property which they hold in charitable trust can be taken under execution upon it, and if, and while they hold no property but in such trust, this judgment cannot be collected of them. We are at liberty to hold this way, because there is no decision which is controlling, and we must so hold because we think the true reasoning to be gathered from all the cases compels it. See Fordyce v. Woman's Library, 79 Ark. 558, 559, and Mersey Docks Trustees v. Gibbs, supra."

In the instant case the charter of the defendant corporation is in evidence and its character as a charitable organization is therein clearly defined and it is apparent therefrom that all property real or personal of said corporation is held in trust for the charitable purposes therein set forth. It further appears by uncontroverted

testimony that a judgment in this case against the defendant, if satisfied, would deplete the charitable trust thus created.

We must adhere to the ruling enunciated in the case of *St. Mary's Academy v. Solomon, supra,* and hold that where the testimony affirmatively discloses a charitable trust, and a judgment against said trust, if satisfied, will deplete the trust fund, under such circumstances, a plaintiff cannot maintain an action against such a defendant.

Judgment is affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE BURKE and MR. JUSTICE BUTLER concur.