No. 18,804.

LADISLAU MICHARD, ETC. *v.* THE MYRON STRATTON HOME.

(355 P. [2d] 1078)

Decided October 17, 1960.

Mr. WALLACE LUNDQUIST, Mr. EUGENE D. FAUS, for plaintiff in error.

Mr. KARL R. ROSS, for defendant in error.

Mr. JOSEPH A. CRAVEN, Mr. GLENN G. SAUNDERS, Amici Curiae.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THE parties will be referred to as they appeared in the trial court, where plaintiff in error was plaintiff and defendant in error was defendant.

Plaintiff's complaint set forth two claims for relief. The first alleged the unlawful termination of a certain five year lease in which the plaintiff was the lessee and the defendant was lessor. This lease pertained to certain business premises in downtown Denver. The second claim sounded in tort and described an alleged property injury perpetrated by the defendant on the plaintiff, fraudulent in character, and growing out of failure of the defendant through its agent to disclose plans which it then had, to demolish the improvements on the leased premises. Plaintiff alleged that had she known that defendant then intended to enter into a long term lease involving demolition of the building in question she would not have signed the lease; that she closed her Chicago business and moved to Denver in the belief that the lease would continue for 5 years with a three year renewal, but within a matter of months after its execution she received notice of termination.

The trial court dismissed the complaint. The reason for dismissal of the first claim was insufficiency of the trade name affidavit which had been filed by plaintiff. This affidavit showed plaintiff and her husband, Charles Thomas Michard, as co-partners doing business as Mrs. Michard Candies. The trial court granted plaintiff 10 days within which to amend her complaint to reflect the information as shown by the trade name affidavit or

to amend the affidavit. Plaintiff elected to proceed on the basis of the complaint as filed and the first claim was thereupon dismissed. Dismissal of the second claim grew out of the charitable character of defendant corporation. The trial court held that by reason of being a charity the defendant was immune from liability based upon the torts of its agents.

In seeking review and reversal, the plaintiff contends that the action can be maintained without compliance with the statute, C.R.S. '53, 141-2-1 and 2, which provisions were invoked by the defendant. 141-2-2 reads:

"Penalty for failure to file — In default of filing for record such affidavits as in section 141-2-1, such persons, partnerships, associations, and corporations, so trading and doing business shall not be permitted to prosecute any suits for the collection of their debts until such affidavit shall be filed. Every person and corporation so in default shall be deemed guilty of a misdemeanor and upon conviction thereof in any court of competent jurisdiction, shall be fined in any sum not less than ten dollars, nor more than three hundred dollars."

Plaintiff argues that this statutory provision does not operate to prohibit a claim based upon the unlawful termination of a lease, in essence a breach of contract, and has no application to unliquidated demands. Plaintiff's contention with respect to dismissal of her second claim is that the immunity relied on by the defendant does not apply to intentional torts; that fraud is intentional in nature and consequently the immunity does not bar the action. A further argument of plaintiff is that if the charitable immunity restriction does apply to intentional torts the rule should be modified or abolished in accordance with the present trend of decisions throughout the United States. A final argument is that the so-called trust fund immunity should not be extended so as to exempt property which has been devoted

or dedicated to business purposes — that this is outside the contemplation of the doctrine as originally conceived and as now recognized.

In maintaining that the trial court ruled correctly on all points, defendant argues that the plaintiff, having filed a trade name affidavit, was bound to bring her action in accordance with the information set forth therein or to amend either the trade name affidavit or the complaint so as to eliminate variance. As to the second claim, defendant argues that the cases dealing with the charitable immunity make no distinction between (a) negligent and intentional torts and (b) the type of assets in the trust fund, whether devoted to charitable purposes or business objectives, and further argues that the trust fund theory is an established doctrine in Colorado and that it should not be abolished or even restricted.

I. *The question whether the trade name statute, C.R.S. '53, 141-2-1 and 2, is applicable.*

■ We disagree with the contention of plaintiff that she was not doing business, and with her further contention that this statute is restricted to actions based on liquidated debts. The holding in *Melcher v. Beeler,* 48 Colo. 233, 110 Pac. 181, that the statute is inapplicable to claims sounding in tort, and in *Wallbrecht v. Blush,* 43 Colo. 329, 95 Pac. 927, that it is inapplicable to actions for the recovery of real property, furnish no guide whatsoever to a decision dealing with the instant circumstances. The case of *Wallace Plumbing Co. v. Dillon,* 71 Colo. 224, 205 Pac. 950, is more closely analogous. There the action was to recover compensation for work, labor and materials furnished at the request of the defendant. The court held that the statute applied to this type of claim and it thus recognized the statute's relevancy where the demand sounds in contract which is unliquidated. The ruling of the trial court in this respect was therefore correct. The *Wallace* case recognized the

matter as one in abatement which may be corrected. On this, the Court said:

"It is not, however, necessary that there be a new trial as to any issue except this single one as to the filing of a proper affidavit. Plaintiff's failure to file the proper affidavit, if such is the fact, is merely a matter in abatement. *Rudneck v. Southern California M. & R. Co.,* 184 Cal. 274, 193 Pac. 775, 778. This conclusion is supported by *Rollins v. Fearnley,* 45 Colo. 319, 323, 101 Pac. 345, holding that a corporation may effectually pay the annual license tax after non-payment is pleaded; and, presenting evidence of the payment, preserve its standing in the pending suit. If upon a new trial it appears that plaintiff has filed, at any time prior to such new trial, the proper affidavit with the county clerk and recorder, it will be sufficient to warrant a judgment in his favor. This procedure is suggested in *Rudneck v. Southern California M. & R. Co.,* supra."

▮ In the present case the plaintiff can very easily correct the caption or file a new trade name affidavit, depending upon the true factual situation. If the partnership described in the affidavit filed is still in existence the plaintiff can amend her caption to show that she is bringing the action on behalf of the partnership or to show her partner as a party plaintiff. After having made this correction, her action can then be reinstated and proceed to trial.

II. *The question of propriety of the dismissal based upon the doctrine of charitable immunity.*

The record is not entirely clear as to the reason for dismissal of the plaintiff's second claim against the Myron Stratton Home. Judging from the briefs and from the statements of counsel during the oral arguments, the dismissal of the second claim was predicated on the fact that the Myron Stratton Home is a charitable corporation and upon the admission in the trial court that there was no non-corporate asset such as insurance coverage to satisfy a judgment.

■ We are of the opinion that the dismissal on this ground was error. This Court has long recognized that the doctrine of charitable immunity, if it can be called immunity, is highly restricted. In *St. Mary's Academy v. Solomon,* 77 Colo. 463, 238 Pac. 22, the Court considered the so called theory of immunity. It was there recognized that charitable immunity does not prevent the entry of a judgment against a charitable corporation, the Court observing:

" * * * Some of the confusion of reasoning arises out of the assertion of the proposition that the trustee could not be liable for his negligence, which is a different matter. We hold that a charitable trust fund may not be depleted by the tort of the trustee but it does not logically follow that no judgment can be rendered against him. He may be liable and yet the trust fund not. * * * "

In a statement later characterized as dictum, the Court indicated that under some circumstances a judgment cannot be rendered against a charity. On this it said:

" * * * In the case of a corporation trustee such as Heriot's hospital in the English case, supra, which seems to have no powers except to administer the trust fund, it is right to say that no judgment can be rendered against it for negligence. Does it appear that the defendant corporations have only such powers? * * * "

In a later case, that of *O'Connor v. Boulder Assn.,* 105 Colo. 259, 96 P. (2d) 835, the *St. Mary's Academy* decision was clarified. Here it was said:

"The authorities on the subject of liability of charitable institutions for torts are many and extremely divergent. 14 C.J.S., p. 545, §75. In *St. Mary's Academy v. Solomon,* 77 Colo. 463, 238 Pac. 22, we for the first time had before us the question of the liability of a charitable institution for the tortuous acts of its agents. The action grew out of the negligent operation of an automobile by an agent of the academy. In reviewing the judgment we committed ourselves to what may be denominated the trust-fund doctrine, and held that the trust-fund rule

does not bar an action against a charitable institution based on the tort of its agents, but that it does prohibit the levying of an execution under a judgment procured against it in such a suit on any property which is a part of the charitable trust. In that case there is some dicta to the effect that if it appeared from the evidence that the defendant institution had no powers except as charitable trustee, we would favor non-liability."

Further clarification appears in *St. Luke's Hospital Association v. Long,* 125 Colo. 25, 24 P. (2d) 917, where the plaintiff alleged affirmatively that trust funds would not be depleted as the result of the entry of a judgment for the reason that the defendant corporation was insured under a contract of indemnity in the amount of any judgment rendered. The Court held that the plaintiffs " * * * unnecessarily alleged on information and belief that a judgment awarded in the case would not result in any depletion of trust funds held by the defendant for the purpose of a charitable trust, for the reason that the defendant corporation was insured under a contract which would indemnify it in the amount of any judgment rendered. * * * " With respect to the extent of charitable immunity, the Court approved the language of *McLeod v. St. Thomas Hospital* as follows:

" * * * We think that is the proper interpretation of the rule adopted in this state and agree with the statement in *McLeod v. St. Thomas Hospital,* 170 Tenn. 423, 95 S.W. (2d) 917, Anno. 145 A.L.R. at page 1341: 'Upon consideration of the cases dealing with the question, and reflecting upon the true principle involved, we think it fairly may be said that the exemption and protection afforded to a charitable institution is not immunity from suit, not nonliability for a tort, but that the protection actually given is to the trust funds themselves. It is a recognition that such funds cannot be seized upon by execution, nor appropriated to the satisfaction of a tort liability. And certainly it is no defense

258

to a tort action, that the defendant has no property subject to execution.' "

It must be concluded, therefore, from a reading of the *O'Connor* and *St. Luke's* cases that so-called charitable immunity does not protect from suit or judgment and that immunity from attachment of trust funds does not come into play until such attachment is attempted. Consequently, the plaintiff in the case at bar was entitled to pursue her second claim to judgment against the Stratton Home. Whether there are funds available to satisfy a judgment, if and when it is entered, is a question which the trial court was not called upon to anticipate in considering the motion to dismiss the second claim. Cf. *Ohmie v. Martinez,* 141 Colo. 480, 349 P. (2d) 131, a comparable example of immunity of property in which the holding was that the statute of non-claims does not operate to bar altogether a claim for damages against an estate — but affects only the plaintiff's right to satisfy a judgment from inventoried estate funds.

As a result of the trial court's error in dismissing the second claim, the judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed herein. The trial court is instructed to grant leave to bring in additional parties and to amend the pleadings if the plaintiff and defendant see fit to do so.

Mr. Justice Moore not participating.