Mr. Chief Justice Hall
delivered the opinion of the court.
*431 The Industrial Commission of Colorado awarded compensation, in the total sum of $11,466.00 payable at the monthly rate of $159.25, to Mary Lois Hale as the dependent widow of Willard Hale, who suffered fatal injuries in the course of his employment. The decedent had no children.
Mary Lois Hale, now Creacy, remarried and thereupon petitioned the Industrial Commission for a lump sum settlement of one-half of the balance of her unpaid compensation. Her claim was based on C.R.S. ’53, 81-11-4.
The Commission held that her right to compensation terminated upon her remarriage, as provided by C.R.S. ’53, 81-11-7; that she had been paid compensation to the date of her remarriage and that nothing further was payable to her. Her petition for the lump sum settlement was denied and the employer and insurer were relieved of the duty of making any further payments.
This award and order of the Industrial Commission was reviewed by the district court and by it affirmed. Mary Lois Creacy is here by writ of error seeking reversal.
Creacy contends that C.R.S. ’53, 81-11-4 and 81-11-7 are not irreconcilable, and they should be read together and effect given to both sections, and Tavenor v. Royal Indemnity Co., 84 Colo. 521, 272 Pac. 3 (1928) which held these sections to be irreconcilable should be overruled.
She further contends that subsequent to the decision in Tavenor v. Royal Indemnity Co., sections 81-11-4 and 81-11-7 were both included in the compilation of 1935 Colorado Statutes Annotated, and both were reenacted by the legislature when it adopted the Colorado Revised Statutes 1953, and that these actions are tantamount to a legislative declaration that section 81-11-4 is still in full force and effect.
In the original Workmen’s Compensation Act, Chapter 210, Session Laws 1919, the pertinent sections were numbered as Sections 55 and 58. The 1919 enactment *432 of Sections 55 and 58, so far as relevant here, provided:
“Section 55. In the case of remarriage of the husband or wife of a deceased employe, without children, he or she shall receive, at the time of marriage a lump sum settlement without commutation equal to one-half of the amount of compensation then remaining unpaid; * * *."
“Section 58. When the right to a death benefit shall become fixed it shall cease, lapse or terminate upon the happening of any of the following contingencies:
“(a) Upon marriage, with the exception as to lump sum settlement, as herein provided. * *
The two sections were consistent and harmonious in the original forms and continued so until 1923, when Section 58 was amended to read:
“Death benefits shall terminate upon the happening of any of the following contingencies and shall thereupon survive to the remaining dependents, if any, to-wit:
“ (a) Upon marriage.”
By this amendment to Section 58, the pre-existing saving clause relating to a partial lump sum settlement to a widow upon her remarriage was eliminated, and the widow’s right to compensation terminated upon her remarriage. Section 58 was further amended by Section 4, Chapter 219, Session Laws 1951, the pertinent portions being identical with the 1923 amendment, and again it omitted the saving clause for the benefit of a widow upon remarriage. The 1923 and the 1951 amendments provided all Acts and parts of Acts in conflict with the Section as amended, were repealed.
Section 55 was never amended; it now appears as C.R.S. ’53, 81-11-4; Section 58 of the 1919 enactment, as amended, now appears as C.R.S. ’53, 81-11-7. For clarity and convenience, both sections will hereafter be referred to by the C.R.S. designation. The pertinent parts of the current sections of the statutes are:

81-11-4:

“In the case of remarriage of the husband or wife of a *433 deceased employee, without children, he or she shall receive, at the time of marriage a lump sum settlement without commutation equal to one half of the amount of compensation then remaining unpaid. * *

81-11-7:

“Death benefits shall terminate upon the happening of any of the following contingencies and shall thereupon survive to the remaining dependents, if any:
“(1) Upon marriage.”
In Tavenor v. Royal Indemnity Co., supra, the facts were similar to the facts here. There the widow, following her remarriage, applied for a lump sum settlement under what is now C.R.S. ’53, section 81-11-4. We there held that the provisions of C.R.S. ’53, 81-11-4 and 81-11-7, were in irreconcilable conflict and that Section 81-11-4 was repealed by implication in the enactment of Section 81-11-7, as amended. We are now urged to overrule Tavenor.
Tavenor represents well-settled law in this jurisdiction. Under the doctrine of stare decisis courts are very reluctant to undo settled law. This doctrine has for its object, uniformity, certainty, and stability of the law and the rights acquired thereunder. The rule of stare decisis is not a doctrine of mortmain; it does not exclude room for growth in the law and the courts are not without power to depart from a prior ruling, or to overrule it, where sound reasons exist and where the general interests will suffer less by such departure than from a strict adherence.
The doctrine will not be departed from for slight or trivial causes, and certainly not where such departure would promote injustice or defeat justice.
The rule in Tavenor was laid down a third of a century ago, has been generally recognized in the practice and by the courts, and has not been previously contested. There have been no legislative changes in the law in this behalf and the rule and the doctrine have become thoroughly established in the jurisprudence of *434 this state. No reason is advanced which calls for deviating from stare decisis, and we decline to do so.
Mr. Chief Justice Burke, speaking of stare decisis in this jurisdiction, in Wolf v. People, 117 Colo. 279, 187 P. (2d) 926, stated:
“* * * The question would thus seem to be definitely and finally disposed of in this jurisdiction under the rule of stare decises (sic). We are not unconscious of the fact that that rule is frequently ignored, with the general approval of the courts, for certain definite and often valid reasons. Among these are doubtful decisions handed down by closely divided courts and recent decisions establishing rules not yet firmly embedded in the jurisprudence of the jurisdiction. No such reason can possibly _ exist here. The best reason, and the one perhaps most frequently invoked to justify a departure from the rule, is that the case under consideration by the court demonstrates that adherence thereto will either promote injustice or defeat justice. No such reason exists in. the instant case for any present change in the rule * * *."
The effect of including Section 81-11-4 in the 1935 compilation of Colorado Statutes Annotated, and the reenactment of this section in Colorado Revised Statutes 1953, merits consideration and comment.
The 1935 Colorado Statutes Annotated was a compilation and not a re-enactment. The 1953 Colorado Revised Statutes are:
"* * * hereby enacted as the positive and statutory law of a general nature of the state of Colorado * * C.R.S. ’53, 135-4-2.
Other pertinent portions of the re-enactment provide:
“135-1-4. Re-enactments, how construed. — The provivisions of any law or statute which is re-enacted, amended or revised, so far as they are the same as those of prior laws, shall be construed as a continuation of such laws and not as new enactments.”
“135-4-9. Continuation of laws. —■ The provisions of *435 Colorado Revised Statutes 1953, so far as they are the same in substantial intent, effect and meaning as those of prior laws, shall be given effect as though a continuation of such laws and not new enactments.”
Where a statute is re-enacted in the substantial form of a pre-existing statute without change of legal effect, it is effective or not effective as of its original and pre-existing status. If a re-enacted statute has been construed, the force and effect of such construction remains an integral part of the re-enacted statute.
The program of revision and publication of statutes is based upon laws that exist as enacted by the legislature and as construed and defined by the courts, and not on laws as they were originally enacted if they have been repealed by construction of the courts or by the legislature. In such circumstances they do not exist at all. Town of Greenwood Village v. District Court, 138 Colo. 283, 332 P. (2d) 210; Thompson v. People, 136 Colo. 336, 316 P. (2d) 1043; Bartell v. People, 137 Colo. 300, 324 P. (2d) 378. This principle obtained in Colorado prior to 1953. See People, ex rel Regents, etc. v. State Board of Equalization, 20 Colo. 220, 37 Pac. 964.
Where statutes are re-enacted the construction previously placed upon them is deemed to have been approved by the legislature in making the enactments and with the understanding the former construction will be adhered to, as was stated in Harvey v. Travelers Ins. Co., 18 Colo. 354, 32 Pac. 935:
“When the legislature repeatedly re-enacts a statute which has theretofore receiyed a settled judicial construction, there can be no doubt as to the legislative intent; it must be considered tfcat the statute is reenacted with the understanding that the former construction will be adhered to.”
In O’Loughlin v. People, 90 Colo. 368, 10 P. (2d) 543, it was said:
“Two legislatures have reenacted the law as it existed at the time of the Dill case, thereby placing their stamp *436 of approval upon our construction of the statute therein indicated. The legislature of 1929 by its reenactment of the identical statute approved of our construction thereof in the Schell case.”
We adhere to the reasoning and the rule in Tavenor v. Royal Indemnity Co., supra. The trial court correctly resolved the issues.
The judgment is affirmed.
Mr. Justice Pringle not participating.