[No. 37041.   En Banc.   November 5, 1964.]

FLORENCE FRIEND *et al.*, *Appellants*, v. COVE METHODIST
CHURCH, INCORPORATED, *Respondent.**

*Kahin, Horswill, Keller, Rohrback, Waldo & Moren* and
*David F. Hiscock,* for appellants.

*Frank H. Roberts, Jr.,* for respondent.

ROSELLINI, J.—The plaintiffs went to a smorgasbord at
the defendant's church as invited members of the public.
When they arrived, the line waiting outside the church
was so long they decided they did not have time to wait
to be served. Returning to the place where their car was
parked, they found another car blocking its exit.

Plaintiff wife went back to the line of people waiting
outside the church, seeking the owner of the car. A young
boy told her the owner was in the kitchen and pointed to
a door which he said was the kitchen door. She went to
the door, opened it, and stepped inside. When she did so,
she fell into a furnace pit and was severely injured.

Plaintiffs brought this action, alleging that the servants
of the defendant were negligent in leaving the door un-

*Reported in 396 P. (2d) 546.

locked. Their action was dismissed by the trial judge on the authority of *Pedersen v. Immanuel Lutheran Church,* 57 Wn. (2d) 576, 358 P. (2d) 549, wherein this court said, in a per curiam opinion, that the rule is that a benevolent, charitable, or religious institution is not liable for torts of its servants against a patron, in the absence of a showing that it failed to exercise reasonable care in the selection or retention of the servant.

In so holding, we followed the rule of *Lyon v. Tumwater Evangelical Free Church,* 47 Wn. (2d) 202, 287 P. (2d) 128, wherein damages were sought on behalf of a child who was injured through the alleged negligence of the driver of a bus in which she was being transported, without charge, to Sunday school, the bus being furnished by the church. The plaintiff relied upon the case of *Pierce v. Yakima Valley Memorial Hospital Ass'n,* 43 Wn. (2d) 162, 260 P. (2d) 765, an en banc decision in which this court declared that public policy no longer dictates that charitable organizations should be immune from liability for negligent acts of their servants. In that case, the plaintiff was a paying patient at a charitable hospital. In the *Lyon* case, *supra,* a department of this court refused to "extend" the doctrine of that case to a nonpaying patron of a church. No reason for this refusal was given.

The propriety of that departmental decision was not considered or discussed in *Pedersen v. Immanuel Lutheran Church, supra,* since it was not challenged. We said:

"The appellant recognizes and accepts the doctrine of charitable immunity as applied by this court. Were that doctrine challenged, this court might be inclined to reevaluate it, but we cannot properly decide the case upon an issue which has not been raised or argued."

In the case before the court at this time, the correctness of the decision has been challenged; and the plaintiffs earnestly contend that the doctrine of *Pierce v. Yakima Valley Memorial Hospital Ass'n, supra,* was improperly limited in *Lyon v. Tumwater Evangelical Free Church, supra.* There is merit in this contention.

The doctrine of the *Pierce* case, *supra,* was not by its language limited to cases involving paying patrons of charitable hospitals. On the contrary, the reasoning of the court and the statement of the doctrine which it adopted made no distinction between paying and nonpaying patients or between hospitals and other kinds of charitable organizations. On page 169 of the opinion, this court said:

"The almost unanimous view expressed in the recent decisions of our sister states is that, in so far as the rule of immunity was ever justified because of the need of financial encouragement and protection, changed conditions have rendered the rule no longer necessary. . . ."

This is a broad statement, applying to all charitable organizations. The authorities cited in support of it are cases wherein the defendants were hospitals, colleges, and churches. In further discussion of this question of public policy, we said, at page 171:

"Perhaps the best way of determining whether the charitable institutions of today need the 'encouragement and stimulation' which immunity affords, is to examine what has happened to them in jurisdictions where the immunity rule does not prevail. We have found nothing in the decisional law of this country to indicate, by statistics or otherwise, that undue hardships or calamities have befallen them. This same observation has frequently been made by other courts and text writers. See *Cohen v. General Hospital Soc.,* 113 Conn. 188, 154 Atl. 435; President and Directors of Georgetown College v. Hughes [130 F. (2d) 810]; *Foster v. Roman Catholic Diocese* [116 Vt. 124, 70 A. (2d) 230], 34 Yale Law Journal 316, 322; 38 Columbia Law Review 1485, 1486; 25 A.L.R. (2d) 29, 63, annotation."

Again, the authorities cited involve suits against a hospital, a church, and a college.

Having observed that generally, charitable institutions are well endowed financially and many of them even subsidized by the government in one way or another; that liability insurance is available at reasonable cost; that there is much diversity of opinion among the courts as to whether "public policy" does require that charitable institutions should be given immunity, we said at page 173:

"If we were to judge the question before us solely upon a factual basis—whether there still prevail the conditions or circumstances which led our court, in 1918, to find that public policy required immunity—the considerations discussed above strongly indicate a negative answer. When we add to these considerations the searching criticisms which have been leveled at the justness and legal soundness of the rule, its repudiation seems almost compelled. In this connection, we cannot do better than quote the best summary of these criticisms which has come to our attention.

" 'In addition to the grounds relied upon in rejecting the specific theories in support of the immunity, the courts advocating abandonment of the immunity rule have pointed out that this rule found its way into the law through misconception or misapplication of previously established principles; that it is doubtful whether the administration of justice has ever been well served by the rule; that, in any event, the rule has become outmoded and is an anachronism; that it is a principle of law, as well as of morals, that men must be just before they are generous; that a charity should not be permitted to inflict injury upon some without the right of redress, in order to bestow charity upon others because the result would be to compel the victim to contribute to the charity against his will; that the law's emphasis generally is on liability, rather than immunity, for wrongdoing, and that, in particular, the modern tendency of the law is to shift the burden from the innocent victim to the community at large, and to distribute losses incurred by individuals through the operation of an enterprise among all who benefit by it rather than to leave them wholly to be borne by those who sustained them; that immunity tends to foster neglect while liability tends to induce care and caution; that all persons, organizations, and corporations stand on an equality before the law, and all should be bound alike or excused alike; that the charitable nature of a tort-feasor cannot place it beyond the law applicable to all; and that protection of life and limb by organized society is of greater importance to mankind than any species of charity and is superior to property rights.' 25 A. L. R. (2d) 29, 58, annotation."

There is no indication that these criticisms apply only where the victim is a paying patron of a hospital. On the contrary, such an artificial distinction is implicitly rejected in this language. Later in the opinion, this court expressly

rejected the validity of any contention that the immunity should be lifted only in certain cases. At page 175, we said:

"Thus in this state, as elsewhere, the immunity rule has been 'devoured' with exceptions. Moreover, the very fact that in Washington and fifteen other jurisdictions the immunity rule is applied only in certain classes of cases, argues strongly against its application in any case. If the financial security of charitable institutions—their 'encouragement and stimulation' does not require immunity in case of injuries to employees, invitees, and strangers, or injuries caused by negligence in selecting personnel and providing equipment, why does it require immunity where a patient is injured due to the negligence of a nurse?

"The answer is so obvious that one would expect to find courts of last resort turning away from the immunity rule in their more recent decisions. This is exactly what has happened. . . ."

We then determined that, inasmuch as the doctrine was created by the court and not by act of the legislature, the court could properly repudiate it.

While the express holding of the case was that,

". . . a charitable, nonprofit hospital should no longer be held immune from liability for injuries to paying patients caused by the negligence of employees of the hospital. . . ."

there was no statement that the holding should be limited to such cases, and the language of the decision does not permit such an interpretation.

It is significant that text writers found in the case an unqualified rejection of the doctrine of charitable immunity. For example, see 2 Harper & James, Law of Torts § 29.16, p. 1667. etc.; Prosser (2d ed.) Torts § 109, p. 788.

The defendant has advanced no sound reason why the conclusion reached in *Pierce v. Yakima Valley Memorial Hospital Ass'n, supra,* should not be given its full import. The reasons given in that opinion for rejecting the doctrine of charitable immunity are as applicable in the case of an injured nonpaying patron as in the case of an injured paying patron. They apply no less to churches, colleges, and other charities than to hospitals. This court

erred in the *Lyon* case, *supra,* when it failed to recognize that the doctrine of charitable immunity was abandoned in its entirety by this court in *Pierce v. Yakima Valley Memorial Hospital Ass'n, supra. Lyon v. Tumwater Evangelical Free Church, supra,* and *Pedersen v. Immanuel Lutheran Church, supra,* are hereby overruled.

To sustain the dismissal of the complaint, the defendant contends that it is not liable because the injuries were incurred on a portion of the premises to which the plaintiff was not invited. Whether this was the case is a fact question for the jury to determine.

It is also contended that the summons and complaint were not served upon a person authorized to receive service. Service was made upon the pastor of the church. The trial court properly held that by answering the complaint without objecting to the method and type of service, the defendant waived any objection it might have. *Mickens v. Mickens,* 62 Wn. (2d) 876, 385 P. (2d) 14.

The judgment dismissing the complaint is reversed, and the cause is remanded with directions to proceed to trial on the merits.

OTT, C.J., FINLEY, WEAVER, HUNTER, HAMILTON, and HALE, JJ., and MURRAY, J. Pro Tem., concur.

FINLEY, J. (concurring specially)—I have signed and thus concur in the majority opinion. However, having signed and become a part of the majority, I feel impelled to support and supplement with some comment pertaining particularly to the dissent and to matters high-lighted therein.

First, the dissent is a reiteration, basically, of a thesis which, in the vernacular, might read: "Judges go home— Legislators are the most!" The thesis was rejected by the majority of the court, I think, as long ago as 1953 in *Pierce v. Yakima Valley Memorial Hospital Ass'n,* 43 Wn. (2d) 162, 260 P. (2d) 765 (1953), and again recently, as I thought and emphasized in concurring specially in *Kelso v. Tacoma,* 63 Wn. (2d) 913, 390 P. (2d) 2 (1964).

Second, the dissent somewhat curiously seems to favor

and to applaud the majority's abrogation of sovereign immunity as a bar to personal injury tort claims.[1] But while applauding this development and the action or role of the majority therein, there is, in fact, and somewhat incongrously, a pervasive aura of criticism, disapproval and basic dissent. In other perhaps ancient contexts this might have been characterized as a kind of legerdemain or prestidigitator's technique, in that the hand, and sometimes the word, is quicker than the eye. Be that as it may, I am at a continuing loss as to how outspoken gladness or enthusiasm over the demise of an old friend can be rationalized or euphemized simply by regretting deeply the manner of his death or execution as the case may be.

Third, it seems to me that the use of word labels or symbolic generalities in the dissent in describing the action of the majority as "legislation" rather than "adjudication," greatly oversimplifies the nature of the judicial process, its functions and responsibilities, and helps very little in terms of historical perspective and realistic appreciation of judicial responsibility, authority, and function. (See concurring opinion in *Kelso v. Tacoma, supra;* and Peck, *The Role of the Courts and the Legislatures in the Reform of Tort Law,* 48 Minn. L. Rev. 265 (1963)).

It is, I think, both interesting and pertinent at this juncture to recall the clear implications in the *Pierce* case, *supra,* that the Supreme Judicial Court of Massachusetts, a most sublime tribunal, dropped a stitch or two as recently as 1876 in *McDonald v. Massachusetts General Hospital,* 120 Mass. 432, 21 Am. Rep. 529 (1876). There, the doctrine of charitable immunity was first either judicially created or imported, perhaps even smuggled, into this country, possibly with the general idea of conforming to what seemingly had been the established English common law, evidenced by Lord Cottenham's dictum in 1839, in *Duncan v.*

---

[1] With some shift in nomenclature and perhaps in emphasis, what we are really talking about in this case is serious harm and personal injury alleged to have been negligently perpetrated or *inflicted on a human body* at the hands of a charitable legal entity.

*Findlater,* 7 Eng. Rep. 934, and the decision embracing this dictum in 1861 in *Holliday v. Vestry of the Parish of St. Leonard, Shoreditch,* 142 Eng. Rep. 769. But the Massachusetts judicial error (and a large sized one in terms of any orthodox justification for the indicated spurious judicial import) was in overlooking the fact that the *Cottenham dictum* and the *Holliday* case, *i.e.,* the doctrine of charitable immunity, had been repudiated and overruled in England *by the judiciary.* Thus, paraphrasing the *Pierce* opinion by Hamley, J., the Massachusetts court resurrected and spuriously imported the charitable immunity doctrine into the United States *5 years after it had been judicially* repudiated and apparently not revived *legislatively* in England.

Fourth, I must agree with the dissent that the *Pierce* case factually concerned a "paying" rather than a "charity" patient. Furthermore, the opinion specifically held that the claim of the "paying" patient against the hospital for damages for negligently inflicted harm and injury was not barred by the doctrine of charitable immunity. In theory and in a strict sense, in terms of stare decisis, the *Pierce* case is citable respecting the doctrine of charitable immunity only in cases subsequently arising in which the facts are identical. But it happens only infrequently that the fact patterns of litigated disputes coincide absolutely; and as a practical matter it is common practice that prior decisions are cited on the basis of close, factual comparability. Coupled with this, the full thrust of the *Pierce* reasoning went beyond the facts there involved. Perhaps this reasoning was dicta, but as I now re-read *Pierce* I must disagree with the dissent in the instant case, for I think *Pierce* gave clear indications that charitable immunity was on the way out, and all the way out at that. Furthermore, it now seems to me that the court overlooked and departed from the notice given in *Pierce* and made inconsistent dispositions in the *Lyon v. Tumwater Evangelical Free Church* case (47 Wn. (2d) 202, 287 P. (2d) 128 (1955)) and the *Pedersen v. Immanuel Lutheran Church* case (57 Wn. (2d) 576, 358 P. (2d) 549). As a member of the court at the

time of *Lyon* and *Pedersen*, I accept my share of responsibility for those decisions. Albeit I now join with the majority and approve overruling those cases and their inconsistency with what now seems to me to have been the full thrust of the opinion in *Pierce*.

HILL, J. (dissenting)—I dissent. I am glad that the doctrine of charitable immunity is dead in this state. I deeply regret the manner of its demise. As in the *Kelso*[2] case, I can say it is "good riddance," but still insist that it was a legislative and not a judicial function.

The majority is entitled to all of the credit (and the blame, if any) for this achievement, and it is too generous in attributing the demise to the *Pierce* case. I would like to clear the record as to what the court held in *Pierce v. Yakima Valley Memorial Hospital Ass'n* (1953), 43 Wn. (2d) 162, 260 P. (2d) 765, and *Lyon v. Tumwater Evangelical Free Church* (1955), 47 Wn. (2d) 202, 287 P. (2d) 128. The majority implies that charitable immunity was exorcised from the law of this state by the *Pierce* opinion; and that, though the *Lyon* case refused to follow it, "No reason for this refusal was given."

Any attempt to make the *Pierce* case stand for more than the court said it did is self delusion. There was no majority on the court then (1953) any more than there was when the *Lyon* opinion was filed (1955), favoring the abolition *by the court* of the doctrine of charitable immunity.

In the *Pierce* case, we said (p. 180):

"It is our opinion that a charitable, nonprofit hospital should no longer be held immune from liability *for injuries to paying patients* caused by the negligence of employees of the hospital. Our previous decisions holding to the contrary are hereby overruled." (Italics mine.)

The court placed its own emphasis on *"for injuries to paying patients"* in the *Lyon* case, where we held that the doctrine of charitable immunity did apply where the plaintiff, a child, was injured while being transported to Sunday

[2]*Kelso v. Tacoma* (1963), 63 Wn. (2d) 913, 390 P. (2d) 2 (see dissent).

School on a bus operated by a church. It was argued, in that case, that the *Pierce* case had abolished charitable immunity in this state. We answered that by saying flatly:

" . . . That case did not reject the rule of charitable immunity, but merely modified it. There was only one question before us in the *Pierce* case, and it was stated in the first paragraph thereof: 'Where a paying patient of a charitable, nonprofit hospital sustains injuries by reason of the negligence of a nurse, may such patient recover damages from the hospital?' We held that such an institution 'should no longer be held immune from liability for injuries to paying patients caused by the negligence of employees of the hospital.' . . . " (p. 204)

While the *Lyon* case was a departmental opinion, Judge Hamley (who wrote the *Pierce* opinion) signed it. Judge Weaver signed both opinions; Judge Schwellenbach, who signed the *Pierce* opinion, wrote the *Lyon* opinion. There can be no doubt that they understood what they were doing in both opinions. The opinions are completely consistent. The simple fact is that the viewpoint of the court has changed. Because of a justified impatience with the slow workings of the legislative process, the court substitutes its view of what the law should be.

Again, I can only say that I dissent—not because I believe charitable immunity is desirable, but because of my conviction that the court should adjudicate and not legislate, especially on public policy matters.