No. 21875.

ROBERT E. HEMENWAY *v.* THE PRESBYTERIAN HOSPITAL ASSOCIATION OF COLORADO, A COLORADO CORPORATION.
(419 P.2d 312)

Decided October 24, 1966.

CLARENCE A. DECKER, for plaintiff in error.

SAUNDERS, SNYDER & ROSS, M. E. MACDOUGALL, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

ROBERT E. HEMENWAY, hereinafter referred to as the

plaintiff, commenced this action against The Presbyterian Hospital Association seeking to recover damages allegedly sustained by him due to the negligence of the hospital. After the filing of an answer in which the allegations of negligence on the part of the hospital were denied, the parties entered into a stipulation which, in pertinent part, was as follows:

"2. An additional defense, inherent in the issues as formed, as agreed, shall be presented in the following form:

" 'The Defendant is an eleemosynary institution existing solely and entirely for religious, charitable and educational purposes; at the time at which the claim made in this action arose Defendant had no insurance to cover said claim; at and since the time of the claim it has had no assets and has now no assets, nor is it empowered to hold or have any assets, except for the above mentioned purposes; and has not and is not authorized to have, receive or take any monetary profits.'
It is agreed that said facts as stated in said defense are true.

"3. The defense next above stated presents a matter of law which the parties desire to have settled as a preliminary matter and before presentation of facts with respect to the claims of negligence made on behalf of Plaintiff since a ruling by the court that said defense is adequate would be made the subject by Plaintiff of an appeal to the Supreme Court. The cost of such an appeal would be much smaller than if that point, together with all other points in a full fact trial, were presented to the Supreme Court. The Plaintiff is financially unable to bear large expenses in connection with this litigation.

"4. It has been agreed between the parties that briefs on the law regarding the above mentioned defense will be presented to the court in the hope and expectation that a ruling on the matter of law involved can be made separately and prior to any further proceedings herein."

Briefs were filed upon the points of law presented by the above stipulations and on April 23, 1965, the trial court entered findings and judgment which included pertinent portions of the written stipulations of the parties. The court further adjudged:

"That any judgment obtained against the defendant institution, if satisfied, would necessarily deplete the trust fund of said institution.

"That the issues of law in the instant case are essentially the same as the issues of law in *Brown v. St. Luke's Hospital Association,* 85 Colo. 167, 274 P. 740. In this particular case it also appeared that a judgment against the charitable trust would deplete its trust funds, and at page 173 the Supreme Court said:

" 'We............hold that where the testimony affirmatively discloses a charitable trust, and a judgment against said trust, if satisfied, will deplete the trust fund, under such circumstances, a plaintiff cannot maintain an action against such a defendant.'

This case has never, according to the understanding of this Court, been overruled.

"That in the case of *Michard v. Stratton Home,* 144 Colo. 251, 355 P.2d 1078, the Supreme Court concluded that a judgment obtained against a charitable institution cannot be satisfied out of the trust funds of said institution, Counsel for both plaintiff and defendant have agreed by Stipulation that satisfaction of any judgment obtained in the instant case would necessarily deplete the trust fund of the defendant institution.

"That the result of the rulings in the Brown and Michard cases above referred to indicate that any further litigation in the present matter would be completely useless as the trust fund of the defendant is not available for the satisfaction of any judgment plaintiff might obtain and there are no other funds available for such a purpose, nor can such funds come into existence in the future."

Judgment was entered dismissing the action.

■ Under the broad coverage of the stipulation in the instant case (which goes far beyond the factual situation that was present in *Michard v. Stratton Home, supra,*) no useful purpose would be served by directing this action to proceed to judgment. It is clear that any judgment that might be obtained by plaintiff could never be satisfied unless this court in this case refuses to be governed by the rule of stare decisis.

■ Counsel for plaintiff readily concedes that if the judgment is to be reversed it will be necessary for this court to overrule its decisions in the cases mentioned by the trial court in its findings. This we are unwilling to do. The following language from the opinion of this court in *Faber v. State of Colorado,* 143 Colo. 240, 353 P.2d 609, is equally applicable here:

"We recognize that there have been numerous criticisms of the rule applied in this case, emanating from various legal writers, judges and students of the law. However, their criticisms and comments should be addressed to the legislature where constitutional authority rests to amend the law. *Jerauld County v. Saint Paul-Mercury Indemnity Co.,* 76 So. Dak 1, 71 N.W. (2d) 571; *Maffei v. Incorporated Town of Kemmerer* (Wyo.), 338 P. (2d) 808; *Lee v. Dunklee,* 84 Ariz. 260, 326 P. (2d) 1117; *Garrett v. Escambia County Hospital Board,* 226 Ala. 201, 94 So. (2d) 762."

The judgment is affirmed.

MR. JUSTICE FRANTZ and MR. JUSTICE PRINGLE dissent.

MR. JUSTICE McWILLIAMS concurring.

I concur in the majority opinion and would simply add these few comments of my own.

As I understand the cases, in Colorado the doctrine of so-called charitable immunity means only that charitable trust funds are immune from levy and execution and the doctrine as heretofore announced by this court does *not* mean that a charitable institution, as such, is

immune from suit or from having a judgment rendered against it in a tort action, for example. See *St. Luke's Hospital Association v. Long*, 125 Colo. 25, 240 P.2d 917, 31 A.L.R. 2d 1120.

Hence, the doctrine of charitable immunity as it exists in Colorado is ordinarily no ground for a dismissal under R.C.P. Colo. 12 of an action brought against any such charitable institution. See *Michard v. Myron Stratton Home*, 144 Colo. 251, 355 P.2d 1078.

However, in the instant case under the particular terms and provisions of the stipulation between the parties, the position of Hemenway, as I understand it, is that he desires and asks that his action be dismissed *unless* this court is prepared to overrule our many prior decisions holding that charitable trust funds are immune from levy and execution. I would not overrule these several prior decisions on this particular matter and accordingly, under this circumstance, I would, and do, hold that the trial court committed no error in dismissing Hemenway's complaint.

MR. JUSTICE PRINGLE dissenting:

I most respectfully dissent.

In my view, the action here is premature. In my opinion, this Court has laid down the doctrine that in this State charitable immunity is not immunity from suit or liability for tort, but only a recognition that trust funds cannot be seized upon by execution nor appropriated to the satisfaction of tort liability. *Michard v. Stratton*, 144 Colo. 251, 355 P.2d 1078; *St. Luke's Hospital Ass'n. v. Long*, 125 Colo. 25, 240 P.2d 917.

In addition, I would overrule entirely and prospectively the doctrine of charitable immunity in this State. My views are expressed in the following cases which overruled earlier cases espousing the doctrine of charitable immunity in those states: *Darling v. Charleston Community Memorial Hosp.*, 33 Ill.2d 326, 211 N.E.2d

253; *Ray v. Tucson Medical Center,* 72 Ariz. 22, 230 P.2d 220; *Haynes v. Presbyterian Hosp. Ass'n.,* 241 Iowa 1269, 45 N.W.2d 151; *Noel v. Menninger Foundation,* 175 Kan. 751, 267 P.2d 934; *Parker v. Port Huron Hosp.,* 361 Mich. 1, 105 N.W.2d 1; *Bing v. Thunig,* 2 N.Y.2d 656, 163 N.Y.S. 2d 3, 143 N.E.2d 3; *Flagiello v. Pennsylvania Hosp.,* 417 Pa. 486, 208 A.2d 193; *Hungerford v. Portland Sanitarium & Benevolent Ass'n.,* 235 Ore. 412, 384 P.2d 1009; *Friend v. Cove Methodist Church, Inc.,* 65 Wash.2d 174, 396 P.2d 546.

There is no need to lengthen the reports by citing at length from these cases ideas which are not original with me.

Mr. Justice Frantz dissenting:

Regardless of the merits of the contentions of the parties in this particular case, the majority's reliance on the quotation from *Faber v. Colorado,* 143 Colo. 240, 353 P.2d 609, is unsettling. If the quotation contains the implications which I believe can be drawn from it, its use is indeed unfortunate. To expressly state or suggest that the legislature has the sole authority to set aright this court's erroneous or ill-advised pronouncements is to open a Pandora's box of legal problems.

An implication to be drawn from the quotation, in the context of this decision, is that a court has no constitutional authority to correct its own mistakes and that, if the court misstates the law, its hands are tied constitutionally until the legislature unties them. Such represents an unseemly self-imposed abridgement of the court's authority. Another implication to be drawn is that the correction of a mistake by the court constitutes an amendment of the law. Neither implication should be given even a semblance of viability by this court.

This court has on a number of occasions — as have the courts of the other forty-nine states of this Union — discarded a rule which has been shown upon further

reflection to have been wrong, and has discovered and declared the rule that should have been applied. Courts are established "to render justice," *Lewis v. Buckskin Joe's*, 156 Colo. 46, 396 P.2d 933, and once it appears that a rule is an unjust one and its application results in repeated injustices, courts should and do have authority to undo the wrong declaration of principle.

Courts do not amend laws. Courts discover and declare principles. Should a court discover and declare a wrong principle, it has the authority to admit its error and to state the correct principle in a later case. In such event the wrong principle is the rule only for the case in which it was enunciated, because finality must attach to a decision. By discovering and declaring the proper rule the court in effect says that the erroneous statement of principle was never the rule.

By the language used in the majority opinion, doubt is cast upon the propriety of all previous decisions in which this court has overruled its previous declarations of law. This language suggests that the court was without constitutional authority to overrule previous misstatements of the law, and it further suggests that the court amended the law when it overruled its previous error, thereby acting legislatively rather than judicially.

Charitable tort immunity has been completely rejected in twenty-three states, the District of Columbia, and Puerto Rico. In many of these states the courts overruled previous decisions in which they recognized the doctrine. At least nineteen other states have recognized a qualified liability, holding that the charity is immune from liability where the recipient of the charity is injured but holding the charity not immune as to employees, invitees and strangers who may be injured as a result of its torts. Fisch, *Charitable Liability for Tort*, 10 Vill. L. Rev. 71 (1964).

The earliest application of the doctrine in the United States was made in *McDonald v. Mass. General Hospital*, 120 Mass. 432 (1876). The Massachusetts court relied

upon the case of *Holliday v. St. Leonard's*, 142 Eng. Rep. 769 (1861). The English case adopted a dictum from *Duncan v. Findlater*, 7 Eng. Rep. 934 (1839); later reiterated in *Feofees of Heriot's Hospital v. Ross*, 8 Eng. Rep. 1508 (1846). Apparently the Massachusetts court was unaware that the dictum in *Duncan, supra,* had been overruled in the case of *Mersey Docks & Harbour Bd. Trustees v. Gibbs*, 11 Eng. Rep. 1500 (1866), and that *Holliday, supra,* was expressly overruled in *Foreman v. Mayor of Canterbury*, L.R. 6 Q.B. 214 (1871). Charitable tort immunity was put in limbo completely in *Gilbert v. Corporation of Trinity House*, 17 Q.B. 795 (1886).

I would have this court join the ranks of those jurisdictions which have discarded the doctrine of charitable immunity.

ADDENDUM by MR. JUSTICE MOORE.

As author of the majority opinion I cannot permit certain statements contained in the dissenting opinion of Mr. Justice Frantz to remain unnoticed. He asserts: "To expressly state or suggest that the legislature has the sole authority to set aright this court's erroneous or ill-advised pronouncements is to open a Pandora's box of legal problems."

My answer to that statement is that the real "Pandora's box of legal problems" will be presented if the time ever comes when the rule of stare decisis is discarded as that dissent would have us do in this case, and a liability which was nonexistent on the date of a particular event under the solemn pronouncement of this court suddenly and without warning is given retrospective effect. This surprise liability would be assessed because the long-established rule of law announced on several different occasions by distinguished and highly respected judges of this court, does not square with the personal philosophical beliefs of those ascending the bench at a later time who see fit to label the long-

established doctrine "erroneous or ill-advised pronouncements." The particular "erroneous or ill-advised pronouncement," involved in this case has for about seventy-five years, been well established in the "common law" of the nation. Colorado, through a long line of decisions has seen fit to subscribe to its rationale and soundness, and we believe that it is neither erroneous nor ill-advised.

It is true that on rare occasions this court has overruled a decision rendered in a former case. There are well established guide lines governing the exercise of this power. Not one of the essential circumstances which must be present to justify a refusal of this court to be governed by the rule of stare decisis is present in this case. No good purpose would be served by repeating these essentials here. They are mentioned in the opinions of this court in *Creacy v. Industrial Commission of Colorado,* 148 Colo. 429, 366 P.2d 384, and *People ex rel. Public Utilities Commission v. Mountain States Telephone and Telegraph Company,* 125 Colo. 167, 243 P.2d 397, and cases therein cited. In *Creacy v. Industrial Commission of Colorado, supra,* we find this pertinent language:

"* * * Under the doctrine of stare decisis courts are very reluctant to undo settled law. This doctrine has for its object, uniformity, certainty, and stability of the law and the rights acquired thereunder. * * *"

The dissenting opinion of Mr. Justice Frantz contains the suggestion that former distinguished judges of this court were led to "discover and declare a wrong principle" when in 1925 the case of *St. Mary's Academy v. Solomon,* 77 Colo. 463, 238 Pac. 22, was decided. They did nothing of the kind. The numerous adjudicated cases cited in that opinion show conclusively that immunity of charitable trusts from tort liability had long been established even then. Since that opinion the doctrine has been repeatedly recognized and applied by this court.

At many sessions of the legislature in the last forty

years attempts have been made to do away with this doctrine and to substitute therefor the political philosophy expressed in the dissenting opinion of Mr. Justice Frantz. But the legislature has always refused to correct the "erroneous or ill-advised pronouncements" as continued in effect for over forty years by opinions of this court.

If I correctly understand the purport of the dissenting opinion of Mr. Justice Frantz, it now becomes the duty of this court to "discover and declare" the true principle and reach an opposite conclusion, and that by so doing we will only be asserting that the former rule, so soundly embedded in our jurisprudence, was really never the rule at all. It was just the "erroneous or ill-advised pronouncement" of hundreds of otherwise competent jurists. This is the kind of tightrope upon which I cannot walk.

I have no hesitancy in saying that when a rule of law has been established, as the one under discussion in this case, it does not lie within the power of this court to judicially legislate it out of existence. It is no adequate reason to refuse to be governed by the rule of stare decisis to complain that we have waited long enough for the legislature to do what some one or more of us think it should do.

Judges of courts of last resort must recognize that there are constitutional limits upon their power. They have no legislative power. The course of conduct advocated by the dissent of Mr. Justice Frantz in the instant case would amount to retrospectively fastening a liability upon a charitable trust for acts carrying no liability at the time they were committed. I am at a loss to understand how such a course is not "judicial legislation" of a kind which the legislature could not accomplish because of constitutional safeguards against retrospective laws. This court has condemned such procedure and as early as March 28, 1927, in the case of *Aetna Life Insurance Co. v. Industrial Commission*, 81 Colo. 233,

254 Pac. 995, held that any change in the law was for the legislature — not the courts. From that opinion I quote the following:

"* * * An affirmance of this judgment establishes the rule that when one in the course of his employment is reasonably required to be at a particular place at a particular time and there meets with an accident, although one which any other person then and there present would have met with irrespective of his employment, that accident is one 'arising out of' the employment of the person so injured. *To that rule I think we are committed and the remedy, if any, to be applied, rests with the legislature.* * * *" (Emphasis supplied.)

To like effect is the opinion in *London Guarantee and Accident Company v. McCoy,* 97 Colo. 13, 45 P.2d 900.

I refuse to dismiss these precedents by classifying them as "erroneous or ill-advised pronouncements." They stand solidly for the basic concept that judges do not have unlimited power and that judicial legislation is abhorrent to the doctrine of separation of powers of government. As aptly stated in *McGraw v. Rural High School,* 120 Kan. 413, 243 Pac. 1038, on the question of whether as a matter of policy the doctrine of state immunity in tort actions should be abrogated, "But the legislature must make the change in policy, not the courts." Courts should not change long established public policy giving rise to new rights and new liabilities basing their decisions "on their own concept of 'sociological enlightenment' rather than await legislative reaction to such claimed modern advancement." *Maffei v. Incorporated Town of Kemmerer,* 80 Wyo. 33, 338 P.2d 808.

In conclusion I direct attention to the opinion in *Livingston v. Regents of New Mexico College of Agriculture,* 64 N.M. 306, 328 P.2d 78, where we find the following:

"We admit that the logic of appellants' argument might very well justify a change in the public policy of this jurisdiction. We feel, however, that the appel-

lants' argument should be addressed to the legislature and not to this court. In Dougherty v. Vidal, 37 N.M. 256, 21 P.2d 90, 93, this court said:

" '* * * We are warned, however, that one branch of government may not safely or wisely carry its zeal for the rights of the citizen so far as to encroach upon the functions of a coordinate branch. * * * *The Legislature is no doubt as sensitive to injustice as the courts.* By unsound or specious reasoning we might arrive at rough justice in a particular case. More often we could do nothing. *It is better that all understand that the legislative responsibility is undivided.*' (Emphasis is that of the New Mexico court.) The New Mexico court then inquires:

" 'Are we to say that the legislature should have expanded the provisions of the 1941 Act so as to have permitted recovery in an action such as this; and that the legislature having failed to do so, we will declare such to be the policy of this state'?

"And the court then gives its own answer:

"To do this, we think would usurp the functions of the legislative branch of our government. Dougherty v. Vidal, supra; Vigil v. State, 56 N.M. 411, 244 P.2d 1110."